**Joe Clark MITCHELL, Petitioner–Appellee, Cross–Appellant,**

v.

**John REES, Respondent–Appellant, Cross–Appellee.**

Nos. 95–6232, 95–6397.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 18, 1996.

Decided May 29, 1997.

---

Thomas W. Watson, Asst. F.P. Defender (argued and briefed), Federal Public Defender's Office, Nashville, TN, for Appellee.

Michael J. Fahey, II (argued and briefed), Office of the Attorney General, Civil Litigation & State Services Division, Nashville, TN, Christina S. Shevalier (briefed), Office of the Attorney General, Criminal Justice Division, Nashville, TN, for Appellant.

Before: KEITH, SILER, and BATCHELDER, Circuit Judges.

BATCHELDER, J., delivered the opinion of the court, in which SILER, J., joined. KEITH, J. (pp. 579–83), delivered a separate dissenting opinion.

## OPINION

BATCHELDER, Circuit Judge.

Joe Clark Mitchell filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Middle District of Tennessee. The district court granted the petition and issued the writ. Respondent–Warden John Rees appeals, and the petitioner cross appeals.

## I. BACKGROUND

### A. STATE COURT PROCEEDINGS

Petitioner was indicted in 1982 by a Maury County, Tennessee, grand jury on charges of aggravated sexual battery, arson, first-degree burglary, and two counts each of aggravated assault, armed robbery, and aggravated kidnapping, and in 1983, in a second indictment, on two charges of aggravated rape, all arising out of the same incident. His trial took place in September 1986.[1]

---

1. The delay between indictments and trial was attributable in part to the fact that Mitchell fled the jurisdiction and for some two years fought extradition. The record reflects that after he was eventually returned to Tennessee, Mitchell and his trial counsel adopted the trial strategy of postponing the trial for as long as possible in the hope that the more elderly of his alleged victims

The trial court dismissed the aggravated-sexual-battery charge, and the jury convicted Mitchell on the remaining charges. In affirming the conviction, the Tennessee Court of Criminal Appeals rejected all but one of Mitchell's contentions that the evidence was insufficient to support his conviction. Because the evidence did not support the second aggravated-rape conviction, the court reduced that conviction to simple rape and reduced the sentence accordingly. *State v. Mitchell*, No. 87–152–III, 1988 WL 32362, at *1, *4 (Tenn.Crim.App. April 7, 1988), *permission to appeal denied*, (Tenn. June 27, 1988). The petitioner's

> convictions arose out of a single crime spree during which two women, one quite elderly, were terrorized for several hours. One of the victims testified that as she was leaving her friend's house, a man started towards her across the lawn. He hit her several times with a large stick, and he was armed with a gun and a hunting knife. He forced both women into the house, used duct tape to tape their ankles, arms, mouths, and eyes. He stole their jewelry and ransacked the house. He used a knife to cut the clothes off the testifying witness and raped her. Then he set fire to the house. He carried both women to a car, drove around for several hours, stopping at

> one point to rape the witness one more time. He eventually abandoned the car and the women, and they were able to free themselves and walk for help. . . .

> [A] witness ... testified that the defendant had discussed robbing Mrs. Chapman, one of the victims, on two previous occasions. The conversations took place about two months prior to offenses in this case.

*Id.* at *1–2.

In December 1988, Mitchell filed *pro se* a petition for post-conviction relief in the Circuit Court of Maury County, Tennessee, under the Post–Conviction Procedure Act, Tenn.Code Ann. §§ 40–30–101 to 40–30–124 (1990) (repealed 1995).[2] The petition included several claims of ineffective assistance of trial and appellate counsel,[3] including a claim that counsel had failed to challenge the make-up of the jury pool in Maury County, which, according to Mitchell, unconstitutionally excluded blacks. The circuit court held an evidentiary hearing, at which Mitchell was represented by counsel, on all of the claims raised in the petition. Although Mitchell had not raised at trial, on direct appeal or in his post-conviction petition any claim under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986),[4] or any claim that his

---

would die and her testimony against him would thus be eliminated. This strategy was successful.

2. Tennessee has a new Post–Conviction Procedure Act, Tenn.Code Ann. §§ 40–30–201 to 40–30–222 (Supp.1996), which applies to post-conviction petitions filed after May 10, 1995, and any motions filed after that date to reopen petitions concluded before that date. Tenn.Code Ann. § 40–30–201 (Compiler's Notes). Petitioner does not contend that the new act has any application here.

3. In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the Assistance of Counsel for his defense.

U.S. Const. amend. VI. The Supreme Court has held that the Fourteenth Amendment makes the Sixth Amendment applicable to the states. *Gide-*

*on v. Wainwright*, 372 U.S. 335, 342–45, 83 S.Ct. 792, 795–97, 9 L.Ed.2d 799 (1963), *overruling Betts v. Brady*, 316 U.S. 455, 462, 62 S.Ct. 1252, 1256, 86 L.Ed. 1595 (1942).

4. *Batson* reaffirms that the "Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury *venire* on account of race," 476 U.S. at 86, 106 S.Ct. at 1717 (emphasis added) (citing *Strauder v. West Virginia*, 100 U.S. (10 Otto) 303, 305, 25 L.Ed. 664 (1879)), and holds that the Equal Protection Clause prohibits a prosecutor from challenging "potential jurors solely on account of their race ..." *Id.* at 89, 106 S.Ct. at 1718. *Strauder* addresses the composition of the venire, while *Batson* addresses the composition of the jury. *Batson* established that a defendant may challenge the use of peremptory strikes by relying on facts in his case alone, a test that is easier for the challenger than the test of *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). *See* 476 U.S. at 91–93, 106 S.Ct. at 1720–21.

Although *Batson* itself applied to prosecutorial strikes of potential jurors of the same race as the

trial and direct-appeal attorney had been ineffective for not raising *Batson*,[5] the circuit court permitted Mitchell's counsel to introduce evidence relative to the *Batson* claim during the evidentiary hearing. At the conclusion of the hearing, the circuit court ruled from the bench that the petition should be dismissed, holding that none of Mitchell's claims had any merit. The circuit court did not specifically address the *Batson* issue.

Mitchell appealed to the Tennessee Court of Criminal Appeals, reiterating his ineffective-assistance claims and, in addition, explicitly raising both a *Batson* claim and a claim of ineffective assistance of counsel for failure to raise the *Batson* issue. The state appellate court affirmed. On the ineffective-assistance claims, the court stated:

> The trial judge found from the evidence introduced at the hearing on this case, that trial counsel was competent.
>
> The only evidence was the testimony of the appellant and the trial attorney who represented him in the convicting trial.

We can readily see why the trial judge ruled counsel was competent. The testimony shows trial counsel was well prepared in this case and gave sound advice to the appellant. The appellant's testimony reflects diminished credibility on his part. The record supports the finding of the trial judge on the question of competency.

*Mitchell*, 1991 WL 1351, at *1. The appellate court explicitly addressed the *Batson* issue and made the following findings of fact:

> The appellant testified there were blacks among the venire summoned as prospective jurors for his trial. He further testified the district attorney general used peremptory challenges to remove those called for his case. He further testified no black juror sat on his case.
>
> Trial counsel testified there were blacks in the venire. He was less definite on whether blacks were on this particular panel. The attorney testified he probably told this appellant, as testified to by the

criminal defendant, 476 U.S. at 96, 106 S.Ct. at 1722 (setting forth the *prima facie* case, for *Batson* Step 1); *United States v. McCoy*, 848 F.2d 743, 745 (6th Cir.1988) (same), subsequent opinions hold that the inquiry is whether a potential juror was excluded because of his race, regardless of whether he was of the same race as the defendant. *See Powers v. Ohio*, 499 U.S. 400, 415, 111 S.Ct. 1364, 1373, 113 L.Ed.2d 411 (1991). Other opinions apply the *Batson* principle in the context of strikes by the criminal defendant, *Georgia v. McCollum*, 505 U.S. 42, 59, 112 S.Ct. 2348, 2359, 120 L.Ed.2d 33 (1992), strikes by civil litigants, *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 616, 111 S.Ct. 2077, 2080, 114 L.Ed.2d 660 (1991), and strikes based on sex. *J.E.B. v. Alabama*, 511 U.S. 127, 127, 145, 114 S.Ct. 1419, 1421, 1430, 128 L.Ed.2d 89 (1994).

5. Under the Post–Conviction Procedure Act in effect when Mitchell filed his state post-conviction petition, *see supra* at 572 n. 1, the petitioner is entitled to a hearing on any ground for relief except those that have been either waived or previously determined. TENN.CODE ANN § 40–30–111. "A ground for relief is 'waived' if the petitioner knowingly and understandingly failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." TENN. CODE ANN. § 40–30–112(b)(1). "There is a rebuttable presumption that a ground for relief not raised in any such proceeding which was held was waived." *Id.* § (b)(2).

Mitchell's post-conviction petition contained no claim that the prosecutor had impermissibly used peremptory challenges to strike black jurors from the jury. However, over the state's tepid objection, the state circuit court permitted both the petitioner and his trial counsel to testify at the hearing on the post-conviction petition that the prosecution had stricken blacks from the jury, *Mitchell v. State*, No. 01–C–01–9007–CC–00158, 1991 WL 1351, at *1 (Tenn.Crim.App. Jan.11, 1991), *permission to appeal denied*, (Tenn. April 15, 1991). The petitioner did not seek to present any other evidence on this issue. The petition did contend that Mitchell's trial and direct-appeal attorney was ineffective for failing to (1) challenge the alleged exclusion of felons from "the jury pool from which the grand and trial jury was selected," *i.e.*, the venire, (2) challenge the alleged exclusion from "the jury pool [from] which the trial jury was selected" of a fair representation of blacks in proportion to the black population of Maury County, and (3) challenge, during *voir dire*, the alleged racial prejudices of jurors. Of these three contentions, the transcript of the post-petition hearing reveals that the petitioner waived the first, and the court held that the second and third "absolutely have no merit." None of these is a *Batson* claim. However, the state conceded at oral argument before us that it never raised the issue of procedural default, *i.e.*, the state never contended that the petitioner had waived his *Batson* claim, and the state does not argue that position in its brief, and therefore whether this claim was waived under Tennessee law is not before us.

appellant, that the state was excusing the black jurors.

The record does not show how many peremptory challenges were used by the state or whether the district attorney general exercised peremptory challenges to excuse those who were not a member of the minority class involved in this complaint; nor does the record show whether there were other black persons left in the venire who might have been called to serve in this case.

We conclude the lack of evidence on the Batson issue does not justify this Court upsetting the judgment entered in the original cases.

*Id.*

### B. FEDERAL COURT PROCEEDINGS

In April 1993, Mitchell filed his § 2254 petition in the federal district court, which in August 1993 dismissed all but one of the claims. Two of the claims which the district court promptly dismissed alleged that Mitchell had ineffective assistance of counsel *vis—vis Batson* and other issues, and that there was insufficient evidence to convict him. The sole claim that the district court did not dismiss was the *Batson* claim itself (not the related ineffective-assistance claim) as stated in the federal habeas petition. The district court referred that claim to a magistrate judge for an evidentiary hearing, citing 28 U.S.C. § 636(b) and HABEAS CORPUS RULE 8(b)(1).

The magistrate judge held the hearing and recommended that the habeas petition be denied. The district court rejected that recommendation and granted the petition, ordering the warden to release Mitchell within 90 days unless the state began a retrial within that time. The state timely appealed the granting of the petition, and Mitchell cross-appealed, challenging the district court's earlier order dismissing his claims of ineffective assistance of counsel and insuffi-

ciency of the evidence. In September 1995, the court granted the warden's motion to stay pending appeal.

## II. DISCUSSION

The state asserts that the district court erred in ordering an evidentiary hearing on the *Batson* claim, because the state court made relevant findings that should have been presumed correct. Claiming that the petitioner has asserted none of the factors enumerated in 28 U.S.C. § 2254(d) that would permit the district court to disregard the state court's findings, the respondent urges us to hold that the state court's findings were correct.

The petitioner asserts that the respondent did not object to the magistrate judge's report and recommendation, and did not raise in the district court the issue of whether petitioner was entitled to an evidentiary hearing; consequently, petitioner maintains that respondent is precluded from objecting to the hearing now. In support of this assertion, the petitioner cites *Thomas v. Arn,* 474 U.S. 140, 144–48, 106 S.Ct. 466, 469–72, 88 L.Ed.2d 435 (1985) (upholding the rule of *United States v. Walters,* 638 F.2d 947, 949–50 (6th Cir.1981), that a party, by not objecting in the district court to the magistrate judge's report and recommendation, waives a right to appeal to this court); petitioner, however, provides no case law that applies the *Walters* rule in the circumstances peculiar to this case.

We conclude that the district court erred in ordering an evidentiary hearing on petitioner's *Batson* claim and in granting the petition for the writ. We further hold that the state is not precluded from raising on appeal its objection to the district court's having held that evidentiary hearing.

We begin with the application of 28 U.S.C. § 2254(d),[6] which establishes a presumption

---

6. 28 U.S.C. § 2254(d) provides:

In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdic-

tion in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish

of correctness for factual determinations made by the state courts whose judgments are challenged by the federal habeas petitioner.[7] The Supreme Court, in *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), held that § 2254(d) mandated that the presumption of correctness be applied by the habeas court to a finding of the state appellate court that " 'the facts of the present case' did not adequately support respondent's claim." *Id.* at 546, 101 S.Ct. at 768.[8] The Court went on to lay down the rule that "a habeas court should include in its opinion granting the writ the reasoning which led it to conclude that any of the first seven factors were present, or the reasoning which led it to conclude that the state finding was 'not fairly supported by the record.' " *Id.* at 551, 101 S.Ct. at 771. The reason for

this requirement, the Court explained, is that "[n]o court reviewing the grant of an application for habeas corpus should be left to guess as to the habeas court's reasons for granting relief notwithstanding the provisions of § 2254(d)." *Id.* And in a footnote, the Court further explained that "the 1966 amendments embodied in § 2254(d) were intended by Congress as limitations on the exercise of [federal court] jurisdiction. As we held in *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908) and have repeatedly since reaffirmed, 'it is the duty of this [C]ourt to see to it that the jurisdiction of the [district court] which is defined and limited by statute, is not exceeded.' " *Id.* at 548, n. 2, 101 S.Ct. at 770.[9]

In the case before us, the state appellate court reviewed the evidence presented in the

or it shall otherwise appear, or the respondent shall admit—
    (1) that the merits of the factual dispute were not resolved in the State court hearing;
    (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
    (3) that the material facts were not adequately developed at the State court hearing;
    (4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;
    (5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;
    (6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or
    (7) that the applicant was otherwise denied due process of law in the State court proceeding;
    (8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such a factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:
And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not

fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

7. After the judgment granting the petition was entered, 28 U.S.C. § 2254 was amended. Neither of the parties has raised the issue of the applicability of the amended statute in this case, and we do not address that issue.

8. In *Sumner*, the Court held that the habeas petitioner ("Respondent" in the Supreme Court Proceedings) had received the "hearing" required by 28 U.S.C. § 2254(d), even though the factual determinations had been made by the state court of appeals after review of the trial court record. "Both the respondent and the State were formally before the court. Respondent was given an opportunity to be heard and his claim received plenary consideration even though he failed to raise it before the trial court." *Sumner*, 449 U.S. at 546, 101 S.Ct. at 768. In the case before us, the habeas petitioner was permitted to, and did, present evidence relative to his *Batson* claim at the evidentiary hearing on his post-conviction proceeding, even though he had failed to plead such a claim in his post-conviction petition. The trial court, without mentioning the *Batson* claim in particular, ruled that all of petitioner's claims were meritless, but the court of criminal appeals reviewed all of that evidence, and made specific findings, including the finding that the lack of evidence on the *Batson* claim did not justify setting aside the conviction.

9. For this reason, petitioner's contention here that the state has waived its right to object to the evidentiary hearing is without merit.

course of the hearing on the post-conviction petition, made findings of fact both as to what the record did show and what it did not show in regard to the *Batson* claim, and held that "the lack of evidence on the *Batson* issue does not justify this Court in upsetting the judgment entered in the original cases." Like the state appellate court finding in *Sumner*, this finding is entitled to the presumption of correctness mandated by § 2254(d) unless one of the enumerated exceptions in that section applies. The district court, however, neither gave any deference to that finding nor made any reference at all to § 2254(d). Rather, in spite of its explicit acknowledgment that "The Tennessee Court of Criminal Appeals found that there was insufficient evidence in the record to rule upon this claim," the district court ordered that the magistrate judge conduct an evidentiary hearing on the claim, stating that "This Court cannot, however, ignore the facts in this record which suggest that the prosecution may have acted improperly."

■ Because § 2254(d) is an express limitation on the district court's jurisdiction, a district court is without authority to hold an evidentiary hearing on a matter on which the state court has made findings unless one of the factors contained in § 2254(d) applies. It was error, therefore, for the district court to dispense with the presumption of correctness embodied in § 2254(d) and to order an evidentiary hearing without providing a written statement of the "reasoning which led it to conclude that any of the first seven factors were present, or the reasoning which led it to conclude that the state finding was 'not fairly supported by the record.'" *Id.* at 551, 101 S.Ct. at 771. We are satisfied that the district court could not have proceeded on the basis of § 2254(d)(8), since, as we more fully explain below, the state appellate court's finding that there was insufficient evidence of a *Batson* violation is "fairly supported" by the record of the state court proceedings. It is, however, implicit in the district court record that the petitioner and the court proceeded on the basis of § 2254(d)(3), "that the material facts were not adequately developed at the State court hearing."

■ Once a district court has properly determined that it may dispense with the presumption of correctness mandated by § 2254(d), the court has some discretion in determining *whether* to hold an evidentiary hearing. *See Lonchar v. Thomas,* 517 U.S. ——, ——, 116 S.Ct. 1293, 1300, 134 L.Ed.2d 440 (1996) (citing HABEAS CORPUS Rule 8(a); *Townsend v. Sain,* 372 U.S. 293, 318, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963); *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 11–12, 112 S.Ct. 1715, 1720–21, 118 L.Ed.2d 318 (1992)); *see also Sims v. Livesay,* 970 F.2d 1575, 1579 (1992) (quoting *Townsend,* 372 U.S. at 318, 83 S.Ct. at 759). However, an habeas petitioner who has not developed the record in state court is entitled to an evidentiary hearing *only* if he shows (1) "cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure" or (2) "that a fundamental miscarriage of justice would result from failure to hold a federal evidentiary hearing." *Keeney,* 504 U.S. at 11–12, 112 S.Ct. at 1720 (citing *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986)), *overruling Townsend in part; Mann v. Scott,* 41 F.3d 968, 985 (5th Cir.1994) (holding that the habeas petitioner bears the burden of proof on both points (citing *Keeney,* 504 U.S. at 11–12, 112 S.Ct. at 1720)), *cert. denied,* 514 U.S. 1117, 115 S.Ct. 1977, 131 L.Ed.2d 865 (1995). Therefore, a district court abuses its discretion by ordering such a hearing without first requiring the petitioner to make the requisite showing.[10]

In its answer to the petition for the writ, the state explicitly claimed that the state courts had made findings of fact with regard to the *Batson* claim and that petitioner had made no showing of any factor under § 2254(d) that would overcome the presump-

---

10. A district court abuses its discretion when it "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *First Technology Safety Sys., Inc. v. Depinet,* 11 F.3d 641, 647 (6th Cir. 1993) (citation omitted); *see also Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.,* 753 F.2d 1354, 1356 (6th Cir.) (citations omitted), *cert. dismissed,* 469 U.S. 1200, 105 S.Ct. 1155, 84 L.Ed.2d 309 (1985).

tion of correctness of those findings. As the *Keeney* Court made clear, 504 U.S. at 8–9, 112 S.Ct. at 1719, petitioner had the burden of developing the factual record on his *Batson* claim in state court. The Tennessee Court of Criminal Appeals accurately summarized all of the evidence relative to Mitchell's claim of a *Batson* violation presented during the hearing in the post-conviction proceeding. We conclude, as that court did, that the petitioner failed to sustain that burden.[11]

■ In order to have prevailed in state court on his claim of a *Batson* violation, petitioner was required first to establish a prima facie case of purposeful discrimination in the selection of the jury. *Batson*, 476 U.S. at 93–94, 106 S.Ct. at 1721. The prima facie case may be made by a defendant's showing "that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Id.* (citing *Washington v. Davis*, 426 U.S. 229, 239–242, 96 S.Ct. 2040, 2047–49, 48 L.Ed.2d 597 (1976)). And while such a defendant may make this showing through evidence of systematic exclusion of black jurors from service on juries in the particular jurisdiction, *id.* at 94–95, 106 S.Ct. at 1722, he may also make the showing by relying solely on the facts relative to the selection of the jury in his own case. *Id.* at 95, 106 S.Ct. at 1722.

> In deciding whether the [petitioner] has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference

of discriminatory purpose. These examples are merely illustrative.

*Id.* at 96–97, 106 S.Ct. at 1722–23. Here, however, the record simply does not contain evidence of "all relevant circumstances," or of the "totality of the circumstances," either in the particular jurisdiction or in petitioner's particular case. As the state court pointed out, there is no evidence of how many peremptory challenges were exercised by the state or whether any peremptory challenges were exercised by the state to excuse non-minority jurors. Without that evidence, the state court could not have determined whether the peremptory challenges were exercised in a "pattern" of strikes. There is no evidence in that record relative to the prosecutor's questions and statements during *voir dire* examination, or whether there remained any other black jurors in the venire who might have been called to sit on the petitioner's case. Our review of that record reveals that there is no evidence of a systematic pattern of excluding black jurors in criminal cases in the particular jurisdiction, or any other evidence relative to practices of jury selection in the jurisdiction that would raise an inference of discrimination. *Id.* at 94–95, 106 S.Ct. at 1722–23. When the trial court had before it nothing more than the petitioner's evidence that no blacks sat on his jury and that the state exercised peremptory challenges to strike blacks from the jury, the court could not consider "all relevant circumstances."

■ Because, as the state court of criminal appeals correctly concluded, there was insufficient evidence contained in the record to support a *Batson* challenge, or, as that court put it, "to justify . . . upsetting the judgment

11. Unlike the view expressed in the dissent, we think that the cause and prejudice requirement is essential to the safeguarding of the principles of comity and federalism. See, e.g., *Engle v. Isaac*, 456 U.S. 107, 126–28, 102 S.Ct. 1558, 1570–72, 71 L.Ed.2d 783 (1982). The dissent fails to recognize that the petitioner's failure to develop in the state court proceedings the material facts necessary to support his constitutional claims is a procedural default that can be excused by the federal habeas court only upon a showing of cause and prejudice. Similarly, the dissent fails to recognize that the state court's holding that the record contained insufficient evidence of a

*Batson* violation to justify setting aside petitioner's conviction is a finding of fact entitled to deference under § 2254(d) just as the state court's finding in *Sumner* that " 'the facts in the present case' did not adequately support respondent's claim" was entitled to deference. *Sumner*, 449 U.S. at 545, 101 S.Ct. at 768. It is only by wholly disregarding the procedural record before us, and by shifting to the state court of criminal appeals the burden of adequately developing the factual record on petitioner's behalf, that the dissent is able to conclude that an analysis under *Keeney* is "inutile."

entered in the original case," *Mitchell,* 1991 WL 1351, at *1, that record was inadequately developed to support such a challenge in the federal court as well. The district court was thus required to determine, using a cause-and-prejudice standard, whether petitioner was entitled to an evidentiary hearing on this claim. *Keeney,* 504 U.S. at 12, 112 S.Ct. at 1721

> The state court is the appropriate forum for resolution of factual issues in the first instance, and creating incentives for the deferral of factfinding to later federal-court proceedings can only degrade the accuracy and efficiency of judicial proceedings. This is fully consistent with, and gives meaning to, the requirement of exhaustion.... Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claim on the merits.... A different rule could mean that a habeas petitioner would not be excused for negligent failure to object to the introduction of the prosecution's evidence, but nonetheless would be excused for negligent failure to introduce any evidence of his own to support a constitutional claim.

*Id.* at 9–10, 112 S.Ct. at 1719–20 (citations omitted). Therefore, the district court erred in ordering an evidentiary hearing without requiring the petitioner to establish either (1) cause and prejudice for his failure to adequately develop the material facts in the state court proceedings, or (2) that not holding an evidentiary hearing would result in a fundamental miscarriage of justice.[12]

In sum, the district court erred in granting the petition for the writ. The petition was granted solely on the basis of the evidence adduced at the hearing ordered by the district court, and, as we have explained, that hearing was ordered erroneously.

Finally, we find no error in the district court's dismissal of petitioner's claims of ineffective assistance of counsel[13] and insufficiency of the evidence. The district court found that the petitioner had failed to establish any basis to overcome the statutory presumption of correctness that attaches to the state court's findings of fact; that those findings were supported by the record; and that on those facts the claims were meritless.

### III. CONCLUSION

Accordingly, we VACATE the order granting the petition for the writ of habeas corpus, VACATE the order for the evidentiary hearing, and REMAND this matter to the district court for further proceedings consistent with this order.

KEITH, Circuit Judge, dissenting.

I must dissent from the Majority Opinion because I am very disturbed that a panel of this Court would, based upon a less-than one page opinion by the Tennessee Court of Criminal Appeals, disregard the findings of a district court judge that Mitchell's constitutional rights were violated. The Majority states that the district court committed reversible error in ordering an evidentiary hearing on Mitchell's *Batson* claim, and in granting his petition for the writ. Citing the Supreme Court's opinion in *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), as the justification for its holding, the Majority maintains that the district court should not have held an evidentiary hearing

---

**12.** Briefly stated, a fundamental miscarriage of justice occurs when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent. *E.g., Schlup v. Delo,* 513 U.S. 298, 326–30, 115 S.Ct. 851, 867–68, 130 L.Ed.2d 808 (1995); *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993); *Sawyer v. Whitley,* 505 U.S. 333, 339–42, 112 S.Ct. 2514, 2518–20, 120 L.Ed.2d 269 (1992); *McCleskey,* 499 U.S. at 494, 111 S.Ct. at 1470; *Murray,* 477 U.S. at 495–96, 106 S.Ct. at 2649–50.

**13.** We except from this holding the claim of ineffective assistance of counsel for failure to raise the *Batson* claim at trial or on direct appeal. If petitioner were able to demonstrate that he was entitled under *Keeney* to an evidentiary hearing on his *Batson* claim, and if he were then able to demonstrate that that claim had merit (an issue which we do not reach in this appeal), then he might also be able to prevail on this related ineffective assistance claim. We therefore hold that the judgment of the district court dismissing this claim is vacated, and the matter is remanded to the district court for further proceedings not inconsistent with this opinion.

on a matter on which the state court has made findings. Because the Majority's result-driven opinion is without legal basis and makes a mockery of the judicial concept of fundamental fairness, I dissent.

It is true that in *Mata*, the Supreme Court held that 28 U.S.C. § 2254(d) establishes a cloak of correctness over factual determinations made by state courts whose judgements are being challenged by federal habeas petitioners. *Mata*, 449 U.S. at 544–49, 101 S.Ct. at 767–70. Section 2254 serves as a jurisdictional limit on the authority of federal courts where state courts of competent jurisdiction have made factual findings that are being challenged by a habeas petitioner. 28 U.S.C. § 2254(d). However, the Court also held in *Thompson v. Keohane*, — U.S. —, —, 116 S.Ct. 457, 464, 133 L.Ed.2d 383 (1995) that the presumption of correctness is only applicable when state courts have made findings, and then only to state court findings of historical fact. *See also, Wainwright v. Goode*, 464 U.S. 78, 83–85, 104 S.Ct. 378, 381–82, 78 L.Ed.2d 187 (1983) (intimating that if a finding cannot be characterized as a finding of historical fact then the presumption of correctness does not apply); *Patton v. Yount*, 467 U.S. 1025, 1036, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984) (indicating that findings of historical fact are entitled to presumption of correctness). The Circuits that have addressed this issue have uniformly held that only historical findings of state courts are entitled to a presumption of correctness. *Berryman v. Morton*, 100 F.3d 1089, 1097 (3d Cir.1996); *McAleese v. Mazurkiewicz*, 1 F.3d 159, 168 (3d Cir.1993); *Hunt v. Nuth*, 57 F.3d 1327, 1332 (4th Cir. 1995) (stating that "[d]eterminations of historical facts by the state court are presumptively correct"); *Edmond v. Collins*, 8 F.3d 290, 292 (5th Cir.1993) (maintaining that "presumption of correctness applies to ... historical facts underlying ... [a] state's ultimate conclusion of law"); *Milone v. Camp*, 22 F.3d 693, 698–99 (7th Cir.1994) ("State court findings of historical fact are presumed to be correct ... but questions of law or mixed questions of law and fact lack that presumption and are reviewed *de novo*.") (internal quotation marks omitted); *Haley v. Armontrout*, 924 F.2d 735, 740 (8th Cir.1991)

(holding that state court "findings of specific historical fact are presumptively correct"); *Chacon v. Wood*, 36 F.3d 1459, 1465 (9th Cir.1994) (stating that "the ultimate state court determination of the effectiveness of counsel or of the voluntariness of a guilty plea is not subject to deferential review.... Rather, it is the state court's findings on questions of historical fact that are presumed to be correct under § 2254(d)"); *Steele v. Young*, 11 F.3d 1518, 1520 & n. 2 (10th Cir.1993) ("Explicit ... findings of historical facts by the state trial and appellate courts are presumed correct."); *McBride v. Sharpe*, 25 F.3d 962, 971 (11th Cir.1994) ("Of course, the statutory presumption of correctness applies only to findings of historical fact made by the state court, not to mixed determinations of law and fact.").

Even this Circuit, albeit in unpublished opinions, had heretofore recognized that only questions of historical fact are entitled to a presumption of correctness. In *Rhode v. Grayson*, 1994 WL 163645, *1, *3, this Circuit stated, matter-of-factly, that "[g]enerally, a finding of basic, historical fact made by a state trial court should be presumed correct unless a habeas petitioner shows error." Also, in *Staton v. Parke*, 1993 WL 483210, *1, *2, this Court stated that the conclusory statement of the Kentucky Supreme Court holding that the available evidence in that case presented no reasonable basis to justify the instruction requested by the defendant was not a finding of historical fact entitled to a presumption of correctness. This Court stated that "[u]nlike a finding of historical fact, [which is entitled to a presumption of correctness,] this finding is not presumptively correct." The panel's holding in that case is patently at odds with the Majority's conclusion in this case. Admittedly, these opinions are not given the same precedential value as our published opinions, and, though there is no published caselaw from this Circuit directly on point, there is precedent from the Supreme Court and our sister Circuits that cannot simply be ignored.

In *Thompson v. Keohane*, — U.S. —, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995), the Supreme Court held that a state court's conclusion that a defendant was not "in custody"

was not a finding of historical fact entitled to a presumption of correctness. *Id.* at —— ——, 116 S.Ct. at 466–67. The Court defined findings of historical fact as findings of basic, primary, issues that reconstruct "what happened." *Id.* at —— – ——, 116 S.Ct. at 464–67. The Court then held that the state court finding that the defendant was in custody is not such an historical fact, but is rather a mixed question of fact and law. *Id.* Similarly, in *Berryman*, 100 F.3d at 1095, a panel of the Third Circuit held that "a state court's conclusion that counsel rendered effective assistance is not a finding of fact binding on" federal courts because "[e]ffectiveness is not a question of historical fact." (internal quotation marks omitted). Also, in *Chacon*, 36 F.3d at 1464, the Ninth Circuit refused to cloak a state court's findings with the presumption of correctness where there "was ... no relevant state court finding to which deference was due." However, in *McBride*, 25 F.3d at 971, the Eleventh Circuit held that the state court's fact-finding procedure was entitled to a presumption of correctness because the state court made specific historical findings as to each of the issues raised by the defendant.

In the instant case, the Tennessee Court of Appeals did not make any findings of fact whatsoever. Even if one were to torture the Tennessee Court of Appeals ·conclusory statement into a finding of fact, it cannot be seriously contended that that court made a finding of historical fact. At best, that court's statement is a mixed question of law and fact, which is not entitled to the presumption of correctness. The Majority's lamentable opinion is not rehabilitated by its reliance on the Supreme Court's decision in *Mata*. In *Mata*, the Supreme Court respected the factual findings of the state court because it concluded that the state court made specific historical findings that were entitled to deference. There, a defendant challenged the pretrial photographic identification method employed in his case on the basis that his Fourteenth Amendment right to due process was violated. *Id.* at 542, 101 S.Ct. at 766. The Supreme Court reversed the Ninth Circuit, which had found the pretrial identification process to be impermissible, on the grounds that the "findings made by the Court of Appeals for the Ninth Circuit are considerably at odds with the findings made by the California Court of Appeal." *Id.* at 543, 101 S.Ct. at 767. The Court noted that the California Court found "that the photographs were available for cross-examination purposes at the trial[;] ... that there [was] no showing of influence by the investigation officers[;] that the witnesses had an adequate opportunity to view the crime; and that their descriptions are accurate." *Id.* at 542, 101 S.Ct. at 766. Based upon those historical factual findings, which determined "what happened," the California Court concluded that there was no error on the admission of the identification evidence because the "circumstances ... indicate the inherent fairness of the procedure." *Id.* at 542, 101 S.Ct. at 766. ·

Given that the California Court of Appeal made factual findings, and the specificity of those findings, it is understandable why the Supreme Court determined that § 2254 precluded a federal court from overturning those findings unless they fell into one of the categorical exceptions enumerated in § 2254. Unlike the California Court of Appeal, which made specific factual findings and then concluded that there was no error in the admission of the identification, the Court of Criminal Appeals of Tennessee did not make any factual findings to support its conclusion that "the lack of evidence on the *Batson* issue does not justify ... upsetting the· judgment entered in the original cases." *Mitchell v. State of Tennessee*, 1991 WL 1351, * 1 (Tenn. Crim.App. Jan.11, 1991). Consequently, the Majority erroneously, and disingenuously, states that this "finding" is entitled to a presumption of correctness.

A federal court faced with a habeas petition must attempt to protect dual and sometimes competing values. On the one hand, the Court must pay heed to principles of comity and federalism. *See, e.g., Mata*, 449 U.S. at 547, 550, 101 S.Ct. at 769, 770; *Ventura v. Meachum*, 957 F.2d 1048, 1054 (2d Cir.1992). Thus, state courts must be given the opportunity to pass upon state prisoners' constitutional claims, and once state courts have made factual findings, those findings must be given preclusive effect in federal

courts. However, there is another value that must be protected by federal courts faced with a habeas petition. The federal courts are the principal guardians of the rights guaranteed under the United States Constitution. *Chapman v. California*, 386 U.S. 18, 21, 87 S.Ct. 824, 826, 17 L.Ed.2d 705 (1967); *see also United States v. Bd. of Ed.*, 11 F.3d 668, 676 (7th Cir.1993) (J. Cudahy dissenting) (stating that "the federal courts have a central role in enforcing constitutional guarantees against state and local governments"); JESSE H. CHOPER, JUDICIAL REVIEW AND THE NATIONAL POLITICAL PROCESS 60–128 (1980) (stating as the essential role of federal courts the protection of individual liberties). One of the primary methods the federal courts employ to enforce those rights is the writ of habeas corpus, which the Supreme Court has described as "a bulwark against convictions that violate 'fundamental fairness.'" *Engle v. Isaac*, 456 U.S. 107, 126, 102 S.Ct. 1558, 1570, 71 L.Ed.2d 783 (1982) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 97, 97 S.Ct. 2497, 2511, 53 L.Ed.2d 594 (1977)). Unfortunately, in their rush to overturn the district court's finding that Mitchell's constitutional rights had been violated, the Majority distressingly abdicates its role as the protector of the guarantees embodied in our Constitution.

I would agree with the Majority's decision were it based upon the need to safeguard principles of comity and federalism, or the importance of protecting the integrity of state fact-finding processes. I would understand the Majority's opinion had it determined that the district court's findings of fact were clearly erroneous. But I cannot concur in the cloak and dagger manner in which this Court is depriving Mitchell of his constitutional right to be tried by state procedures free of racial bias.

Both the magistrate and the district court, who conducted hearings and made findings of historical fact, agreed that Mitchell was able to establish a prima facie case of race discrimination under *Batson*. Additionally, the magistrate indicated that the prosecutor who conducted Mitchell's trial could not articulate a good reason for challenging a prospective African American juror. The district court agreed with the magistrate that the prosecutor did not have a good reason for challenging the African American juror, but disagreed with the magistrate's conclusion that the prosecutor's reasons were race-neutral. The district court noted that the prosecutor at first stated that he challenged the prospective Black juror because there was "something about the way she looked." He later stated that "she did not look like the right one for this case." Eventually, he settled on the juror's age for striking her from the jury pool. The district court concluded that the prosecutor's reasons, on the basis of his testimony, were "not worthy of belief." The court further noted—and the prosecutor admitted—that there were at least seven other jurors—White jurors—who were the same age or older than the Black juror that was struck. The district court remarked that the prosecutor did not ask any individual questions of the Black juror, nor did he identify "any objective criteria upon which to base his conclusion that ... [she] was unable to follow the evidence because of her elderly appearance." In sum, there is one factor that distinguished the Black juror for the rest of the pool: her race.

In light of the fact that the state court did not make any findings, much less findings of historical fact, the district court properly conducted an evidentiary hearing on Mitchell's *Batson* claim. Thus, the Majority's cause and prejudice analysis is inutile. The Majority argues that because the state court "had before it nothing more than the petitioner's evidence that no Blacks sat on his jury and that the state exercised peremptory challenges to strike blacks from the jury," the court correctly concluded that there was insufficient evidence to support a *Batson* challenge. What the Majority fails to realize is that the correctness *vel non* of the state court opinion is not the primary issue in this appeal. The issue is whether the state court's determination should be presumed correct. Section 2254(d) states that a judgement of a state court is to be presumed correct only after "a hearing on the merits of a factual issue." If the Court of Criminal Appeals of Tennessee did not believe that it had enough evidence on the *Batson* issue, it had only to hold a hearing on that issue to

assure that Mitchell was convicted through processes that were not tainted by the unconstitutional exercise of institutional racism.

I cannot help but be amazed at the length to which the Majority will travel to deny Mitchell a fair trial. On the one hand, the Majority agrees with the Tennessee Court of Criminal Appeals, which held that the record was inadequately developed to support Mitchell's *Batson* claim. On the other hand, citing *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 9–10, 112 S.Ct. 1715, 1719–20, 118 L.Ed.2d 318, (1992), for the proposition that state courts are the appropriate fora for resoluting factual disputes, the Majority ruled against Mitchell for not giving the state court "a fair and full opportunity to address and resolve the claim on the merits...." The fact is that the state court was given an opportunity to pass upon the merits of Mitchell's claim, and it declined to do so. Because the state court declined to review the merits of Mitchell's claim, the district court felt that it was judicially obligated to protect Mitchell's constitutional rights. The district court should be commended, not reversed, for its judicial vigilance by performing its duty in conducting a hearing in a search for the truth. *See Rose v. Mitchell*, 443 U.S. 545, 548, 99 S.Ct. 2993, 2996, 61 L.Ed.2d 739 (1979) (stating that "a claim that the court has discriminated on the basis of race in a given case brings the integrity of the judicial system into direct question" providing a particularly compelling justification for federal habeas corpus review); *see also* Sheri Lynn Johnson, *The Color of Truth: Race and the Assessment of Credibility*, 1 MICH. J. RACE & L. 261, 325 (1996) (arguing that the Constitution may require federal courts to hold evidentiary hearings when state court fact-finding procedures are not adequate to provide a full and fair hearing).

Because the Majority has stretched to the point of incredulity the requirement that state courts make findings of historical fact, and has thereby abdicated its responsibility as the primary guarantor of constitutional rights, I dissent from this judicial travesty.