*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0319P (6th Cir.)
File Name:  00a0319p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ABU-ALI ABDUR'RAHMAN,
    *Petitioner-Appellee/*
    *Cross-Appellant,*

    Nos. 98-6568/6569

*v.*

RICKY BELL, Warden,
    *Respondent-Appellant/*
    *Cross-Appellee.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 96-00380—Todd J. Campbell, District Judge.

Argued:  January 31, 2000

Decided and Filed:  September 13, 2000

Before:  SILER, BATCHELDER, and COLE, Circuit
Judges.

_____

**COUNSEL**

**ARGUED:**  Gordon W. Smith, OFFICE OF THE
ATTORNEY GENERAL, CRIMINAL JUSTICE DIVISION,
Nashville, Tennessee, for Appellant.  Bradley A. MacLean,
FARRIS, WARFIELD & KANADAY, Nashville, Tennessee,

1

William P. Redick, Jr., Whites Creek, Tennessee, for Appellee. **ON BRIEF:** Gordon W. Smith, OFFICE OF THE ATTORNEY GENERAL, CRIMINAL JUSTICE DIVISION, Nashville, Tennessee, for Appellant. Bradley A. MacLean, FARRIS, WARFIELD & KANADAY, Nashville, Tennessee, William P. Redick, Jr., Whites Creek, Tennessee, Brian K. Frazier, NEAL & HARWELL, Nashville, Tennessee, for Appellee.

SILER, J., delivered the opinion of the court. BATCHELDER, J. (pp. 34-41), delivered a separate concurring opinion. COLE, J. (pp. 42-50), delivered a separate opinion concurring in part and dissenting in part.

———————————

## OPINION

———————————

SILER, Circuit Judge. Respondent, Ricky Bell, Warden ("State"), appeals the issuance of a writ of habeas corpus to Petitioner, Abu-Ali Abdur'Rahman ("Petitioner"),[1] vacating Petitioner's sentence of death for first-degree murder on the grounds of ineffective assistance of counsel at the sentencing phase of Petitioner's trial. Additionally, Petitioner cross-appeals the denial of his petition for a writ of habeas corpus seeking relief from his conviction for first-degree murder. We reverse the district court's finding that Petitioner was prejudiced by his trial counsel's deficient performance at the sentencing stage and vacate the portion of the district court's judgment granting the petition for a writ of habeas corpus as to the death sentence. Additionally, we affirm the portion of the district court's judgment denying the petition for a writ of habeas corpus as to the conviction.

———————————

[1] Petitioner was originally named James Lee Jones, but he changed his name to Abu-Ali Abdur'Rahman.

Had counsel adequately performed, the jury weighing whether a death sentence was an appropriate punishment for Abdur'Rahman would have had a representative picture of the person they were sentencing, instead of the one-sided account upon which they based their decision. Like the petitioner recently before the Supreme Court, Abdur'Rahman has "a constitutionally protected right . . . to provide the jury with the mitigating evidence that his trial counsel either failed to discover or failed to offer." *Williams*, 120 S. Ct. at 1513. Given the total lack of mitigating evidence presented at Abdur'Rahman's sentencing hearing, "counsel's conduct so undermined the proper functioning of the adversarial process that the [sentencing hearing] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686; *see also Austin*, 126 F.3d at 848; *Glenn v. Tate*, 71 F.3d 1204, 1210 (6th Cir. 1996). I respectfully dissent.

## I. BACKGROUND

Petitioner was tried and convicted of first-degree murder, assault with intent to commit murder, and armed robbery. He received the death penalty for the murder conviction and two consecutive life terms for the each of the other convictions. The death sentence was imposed pursuant to the jury's finding of three aggravating circumstances: (1) the defendant was previously convicted of one or more felonies whose statutory elements involved the use of violence to the person; (2) the murder was especially heinous, atrocious or cruel in that it involved torture or serious physical abuse beyond that necessary to produce death; and (3) the murder was committed while the defendant was engaged in committing, or was an accomplice in the commission of, or was attempting to commit, or was fleeing after committing or attempting to commit, any first-degree murder, arson, rape, robbery, burglary, theft, or kidnaping. Petitioner's convictions arose out of an offense that occurred in 1986.

On February 16, 1986, Petitioner purchased a small amount of marijuana from Patrick Daniels at the duplex in which Daniels lived in Nashville, Tennessee. Petitioner and Harold Devalle Miller later agreed to rob Daniels. The plan was for Petitioner to enter the duplex under the pretext of making a drug purchase, at which point Miller would force his way into the duplex and "rob" both Daniels and Petitioner with a shotgun that Petitioner had supplied. This plan was never executed, however, as Miller became too frightened to go through with it. Petitioner then formulated a second plan to rob Daniels, this time using a knife to avoid making too much noise.

On February 17, 1986, Petitioner, armed with a shotgun, and Miller, armed with an unloaded pistol, entered the duplex under the pretext of making a drug purchase. Petitioner and Miller displayed their firearms and forced Daniels and his girlfriend, Norma Norman, to the floor. Petitioner then bound Daniels and Norman with duct tape about their hands, feet, eyes, and mouth. After stealing Daniels's bank card,

Petitioner forced Daniels to reveal his PIN number. Petitioner also searched the house and found some marijuana in some sofa cushions.

Petitioner then told Daniels that he had been sent from Chicago to "clean up everything" and that he was there to teach Daniels a lesson. Petitioner obtained a butcher knife from the kitchen and stabbed Daniels six times in the chest, penetrating his heart four times. Prior to and during the stabbing, Daniels was crying and begging Petitioner not to hurt anyone. After Daniels became motionless, Petitioner stabbed Norman in the back several times, but Miller pulled Petitioner away and the two men fled, leaving the knife in Norman's back. Daniels died as the result of his wounds, but Norman survived. Petitioner and Miller also took $300 from a box in Norman's bedroom.

At trial, Petitioner argued that the real motivation for the crime was born out of the influence of his membership in a "quasi-religious paramilitary group" called the Southeastern Gospel Ministry ("SEGM"). Petitioner had a long criminal history, including a conviction for second-degree murder in 1972 and a conviction for assault with a dangerous weapon (a knife) in 1970. Following his incarceration for these offenses, he moved to a halfway house in Nashville. While living at the halfway house he worked for an organization called the Baptist Publishing Board, and eventually met Allen Boyd, one of the Board's owners, and Boyd's associate, William Beard. Boyd and Beard were the leaders of the SEGM; Miller was also a member of the SEGM. One of the alleged goals of the SEGM was to cleanse the black community of drug dealers and other undesirable elements. Boyd allegedly furnished the shotgun used during the offense and assisted Petitioner and Miller after the offense, including giving Miller some money to flee.

Petitioner was initially represented by Neal McAlpin, who was asked by Boyd to take on the representation. Boyd allegedly indicated to McAlpin that he would be paying Petitioner's attorney's fees. However, McAlpin subsequently

defense counsel that a psychiatrist should examine her husband.

Despite his childhood abuse and extensive mental health history, Abdur'Rahman was able to comport his conduct to societal norms and to engage in productive activities. His former fiancé, about whom he informed defense counsel, but whom counsel failed to contact, later testified that, when she knew him in 1983, Abdur'Rahman held a steady job, attended college, and volunteered with a Quaker youth group at a large housing project. She stated that the petitioner was a caring and gentle person who sincerely held Christian beliefs.

While acknowledging that some of this evidence would have been mitigating, the majority adopts the rationale of the state court of appeals that the evidence that defense counsel failed to investigate or present also contained instances of violent conduct and anti-social actions by Abdur'Rahman. This treatment of the evidence by the majority contradicts the emphasis by the courts that evidence considered mitigating by the person facing a death sentence should be allowed to the greatest extent possible to insure a full and fair determination by the jury. *See, e.g., Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982). Further, the majority overlooks that the jury already had much of this evidence of violent or prior criminal conduct before it and that the presentation of available, relevant evidence at sentencing would not have subjected Abdur' Rahman to additional statutory aggravating factors. The mitigating elements of this evidence would have served, instead, to present the jury with an accurate and complete picture of the person they were sentencing – the very purpose of a capital sentencing hearing. In addition, the majority ignores the mitigating potential of nearly all of the available evidence and the fact that some of the evidence that counsel failed to investigate or present does not involve violence or harmful behavior by Abdur'Rahman. *See Williams v. Taylor*, 120 S. Ct. 1495, 1514 (2000) (noting that the presence of unfavorable records did not justify "the failure to introduce the comparatively voluminous amount of evidence that did speak in [petitioner's] favor").

and antisocial personality." Abdur'Rahman's prison records also indicate that Abdur'Rahman was frequently and heavily medicated during at least some of his time in prison and that he beat his head against the wall while in prison. Records from the New Jersey Department of Human Services document his 1967 stay while a youth at the Trenton Psychiatric Hospital, where he was diagnosed with a sociopathic personality disturbance and antisocial reaction with depression, and records from the Davidson County Sheriff's Department show that Abdur'Rahman beat his head against a wall after his arrest there. Further, the record indicates that others in Abdur'Rahman's family had mental health problems. Many of these records were available to defense counsel through the MTMHI report, prepared for the purpose of determining Abdur'Rahman's competence to stand trial;[4] however, counsel failed to investigate or present any of this mitigating information to the jury. Nor did counsel present to the jury a mental health expert who could have testified regarding Abdur'Rahman's mental health problems.

Further, testimony from the trial of Abdur'Rahman's conviction for second-degree murder for the killing of a fellow inmate – a conviction that supported one of the aggravating circumstances – indicated, in the opinion of one expert, that Abdur'Rahman had a borderline personality disorder and schizoid personality. This evidence could have been mitigating with respect to the petitioner's mental health, as well as with respect to the prior murder.

Abdur'Rahman's wife could have her personal observations about his mental health, including the fact that her husband had conversations with people who did not exist, banged his head against the wall, and believed that the couple would give birth to the next Messiah. She also stated that she told

---

[4]The fact that Abdur'Rahman was found competent to stand trial does not, of course, alter the fact that his mental health problems should be considered by the jury at sentencing. *See Blano v. Singletary*, 943 F.2d 1477, 1503 (11th Cir. 1991).

determined that Boyd was a member of the SEGM. With Boyd being the source of his fees, as well as perhaps being involved in the crime, McAlpin felt that a conflict of interest existed within the third-party fee arrangement and that he could not continue the representation. Gail Hughes, an associate of Boyd's, then requested that Lionel Barrett represent Petitioner. Barrett agreed to do so for a retainer fee of $15,000, $5,000 of which was paid to him fairly soon, though he never inquired as to the source of the funds. Barrett and another attorney, Sumter Camp, represented Petitioner at trial.

Petitioner alleges that this representation was ineffective throughout the trial, including both the guilt phase and the sentencing phase. Barrett testified that at the time he received the first $5,000 of the retainer he decided he was not going to perform any work on the case until he received the balance of the retainer fee, a balance that was never paid. Petitioner also claims that Barrett performed no work on the case until he filed pre-trial motions. Petitioner alleges that Barrett's performance as counsel was ineffective due to failure to: (1) investigate; (2) present potentially exculpatory evidence; and (3) present mitigating evidence at the sentencing stage.

His conviction and sentence were affirmed by the Tennessee Supreme Court in *State v. Jones*, 789 S.W.2d 545 (Tenn.), *cert. denied*, 498 U.S. 908 (1990). He sought post-conviction relief in the state trial court which conducted a hearing, made findings, and denied relief. The judgment was affirmed in *Jones v. State*, No. 01C01-9402-CR-00079, 1995 WL 75427 (Tenn. Crim. App. Feb. 23, 1995), and the Tennessee Supreme Court denied review. The United States Supreme Court denied a petition for a writ of certiorari in *Jones v. Tennessee*, 516 U.S. 1122 (1996). Petitioner later filed this petition for a writ of habeas corpus, challenging both his conviction and sentence. After Petitioner's motion for partial summary judgment was denied, the district court held an evidentiary hearing to address the merits of his habeas petition. The district court granted the writ on Petitioner's claim of ineffective assistance of counsel at the sentencing

stage due to counsel's failure to present mitigating evidence despite its availability. However, the district court denied Petitioner's claim of ineffective assistance of counsel at the guilt stage, holding that although the performance of Barrett and Camp was deficient, Petitioner suffered no prejudice thereby. *Abdur'Rahman v. Bell*, 999 F.Supp. 1073 (M.D. Tenn. 1998). This is an appeal from that decision.

## II. DISCUSSION

### A. State's Appeal Challenging the Judgment Granting the Petition for a Writ of Habeas Corpus as to the Death Sentence

### 1. Presumption of Correctness Under 28 U.S.C. § 2254

The State argues that the district court improperly dispensed with the presumption of correctness that is to be accorded to state court findings of fact under 28 U.S.C. § 2254(d)[2] without providing a statement of its reasons for

---

[2] 28 U.S.C. § 2254(d) (repealed), in effect when the instant petition was filed, states:

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit--

  (1) that the merits of the factual dispute were not resolved in the State court hearing;
  (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
  (3) that the material facts were not adequately developed at the State court hearing;
  (4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

---

disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring). The mental health of the defendant has consistently been determined to be relevant, probative information to which the jury is entitled when making a life or death decision. *See, e.g., Carter v. Bell*, 218 F.3d 581 (6th Cir. 2000) (finding that the petitioner was prejudiced by counsel's failure to investigate and present mitigating evidence at sentencing); *Hendricks v. Calderon*, 70 F.3d 1032, 1043 (9th Cir. 1995). The jury, however, heard nothing at sentencing regarding Abdur'Rahman's mental health history.

In the record before us, we have the testimony of Dr. Samuel Craddock, who was part of the team that diagnosed Abdur'Rahman for the state of Tennessee for purposes of competency to stand trial and a potential insanity defense without knowledge of his history of mental illness. Craddock testified that Thorazine and Prolixin, the medications prescribed for Abdur'Rahman in prison, were powerful anti-psychotic medications which raised a question of whether he was mentally ill, and that the symptoms exhibited by Abdur'Rahman were like those of someone with a borderline personality disorder. Dr. Diana McCoy testified that she diagnosed Abdur'Rahman with post-tramatic stress disorder and a possible borderline personality disorder. Dr. Robert Sadoff offered a similar diagnosis as McCoy.

Included in the records before this court are a department of social services report from the state of Washington stating that Abdur'Rahman had a "paranoid personality" and "personality pattern disorder;" Philadelphia school records which include a request for psychiatric services; and prison records, including psychiatric examinations, some which state that Abdur'Rahman does not have a mental illness or psychosis, but does have a history of documented suicide attempts, and some which indicate that Abdur'Rahman was diagnosed with other disorders, including a severe psychopathic personality and a "psychotic depressive reaction

the district court, stated that Abdur'Rahman's "is singularly the worst case of abuse I have come across in 25 years being an academic psychologist . . . I can't even in my memory remember anything that remotely comes close to some of the things I read."

This abuse was attested to by the petitioner, the petitioner's half-sister, who was not contacted by counsel but was available to testify, and the petitioner's brother, Mark Jones, who likewise was not contacted by counsel but stated in an affidavit that he would have been willing to testify at trial.[3] This abuse, while not a justification for petitioner's criminal conduct, is relevant, mitigating evidence that should have been presented to the jury.

Abdur'Rahman had a persistent history of psychiatric disorders and mental health problems. A "defendant[] who commit[s] criminal acts that are attributable to a

---

Ms. Lancaster testified that she and the Petitioner share a common mother, who abandoned Ms. Lancaster and her two brothers when she was an infant. Petitioner's mother put her three children in a taxi, drove them to the woods, and left them. Petitioner's mother later married Petitioner's father, James Jones, Sr. Three more children were born of that marriage -- James (Petitioner), Mark, and Sylvia.
Petitioner's statements to mental health providers [over the course of his life] provide a vivid description of the abuse Petitioner suffered at the hands of his father. Petitioner received regular beatings with a leather strap from his father. Petitioner's father made him take off his clothes, placed him hog-tied in a locked closet, and tethered him to a hook with a piece of leather tied around the head of his penis. Petitioner's father struck Petitioner's penis with a baseball bat. To punish him for smoking, Petitioner's father required him to eat a pack of cigarettes, and when he vomited, was made to eat the vomit. None of this extraordinary abuse, which constitutes relevant mitigating evidence, was heard by the jury.

*Abdur'Rahman v. Bell*, 999 F. Supp. 1073, 1097-98 (M.D. Tenn. 1998) (footnote and citations to record omitted).

[3]Petitioner's brother subsequently committed suicide.

---

doing so as required by *Sumner v. Mata*, 449 U.S. 539 (1981), and *Mitchell v. Rees*, 114 F.3d 571 (6th Cir. 1997). Petitioner responds that claims of ineffective assistance of counsel involve mixed questions of law and fact that are not accorded the presumption of correctness under *Strickland v. Washington*, 466 U.S. 668 (1984).

The post-conviction trial court held that Petitioner's trial counsel had failed to adequately investigate Petitioner's background and mental history, making the following factual findings in the process:

1. Testimony and files of trial counsel showed that few witnesses were investigated or interviewed regarding petitioner's background and mental health history.

---

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;
(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or
(7) that the applicant was otherwise denied due process of law in the State court proceeding;
(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

2. Testimony and files of trial counsel showed that they failed to investigate and obtain available information concerning petitioner's prior psychological consultation at ages 12 to 14 while at Ft. Shafter, Hawaii.

3. Testimony and files of trial counsel showed that they failed to investigate and obtain readily available information concerning petitioner's psychological assessment at age 14 by the school psychologist at Dupont Jr. High School at Ft. Lewis, Washington.

4. Testimony and files of trial counsel showed that they failed to investigate and obtain available information concerning petitioner's juvenile incarceration for being a psychopathic delinquent at Western State Hospital in Tacoma, Washington.

5. Testimony and files of trial counsel showed that they failed to investigate and obtain available information concerning the petitioner's school records in Philadelphia, where on May 24, 1965 there was a request for psychological service by Sayre High School.

6. Testimony and files of trial counsel showed that they failed to investigate and obtain available information concerning petitioner's school records in Philadelphia, where on June 17 he was referred for Special Education.

7. Testimony and files of trial counsel showed that they failed to investigate and obtain available information concerning petitioner's incarceration at the Annadale Institute for Boys, New Jersey, when he was 15, his being placed on psychiatric watch in January of 1967 and his referral to and psychological examination at the New Jersey State [Psychiatric] hospital at Trenton in February of 1967.

8. Testimony and files of trial counsel showed that they failed to investigate and obtain available information concerning petitioner's Army records at ages 17 and 18 with notations regarding his "questionable mental status," bizarre behavior, and psychiatric reports leading ultimately to discharge.

9. Testimony and files of trial counsel showed that they failed to investigate and obtain available information concerning petitioner's psychiatric examination at St.

any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.'" *Penry v. Lynaugh*, 492 U.S. 302, 317 (1989) (quoting *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (emphasis in original)).

Although the jury found three aggravating factors at sentencing, it had nothing to weigh this information against; it is unsurprising that comparing those three factors with the dearth of mitigating evidence that the jury chose to impose a death sentence on Abdur'Rahman. However, "[t]he Eighth Amendment requires a jury to consider the circumstances of the crime and the defendant's background and character during the sentencing phase of a capital trial." *Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997). The jury's failure to consider mitigating evidence "risks erroneous imposition of the death sentence." *McKoy v. North Carolina*, 494 U.S. 433, 442 (1990) (quoting *Eddings v. Oklahoma*, 455 U.S. at 117, n.* (O'Connor, J., concurring)).

Unbeknownst to the jury determining Abdur'Rahman's fate, mitigating evidence existed and was available for presentation at his sentencing hearing. If counsel had performed adequately, the jury could have learned that that Abdur' Rahman has a history of traumatic abuse as a child, that he had a long history of mental health problems and treatments, and, finally, that Abdur'Rahman had previously been a productive member of society.

The abuse suffered as a child by Abdur'Rahman, mostly at the hands of his father, a military policeman, was inhumane and shocking.[2] Dr. Raymond Winbush, who testified before

---

[2]As the district court stated:

   During the hearing in this Court, Nancy Lancaster, Petitioner's half-sister, testified about the abuse and difficulties Petitioner experienced during his childhood. Although some of the information Ms. Lancaster related was based on statements made by other family members, the Court was very impressed with Ms. Lancaster's credibility and demeanor.

The majority suggests that, armed with this evidence, defense counsel could have made a legitimate tactical decision not to present the evidence, which is now in the record but was not presented to the jury, and that we should defer to this decision. Unfortunately, defense counsel's "tactical decision" in this case was to not prepare for the capital sentencing hearing of their client. "[O]ur case law rejects the notion that a 'strategic' decision can be reasonable when the attorney has failed to investigate his options and make a reasonable choice between them." *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991).

Further, and more importantly, I disagree with the majority's finding that Abdur'Rahman was not prejudiced by counsel's failure. To demonstrate prejudice, Abdur'Rahman "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. He need not show that counsel's performance more likely than not affected the outcome of the case. *See id.* at 693-94. Instead, "[w]hen a defendant challenges a death sentence . . ., the question is whether there is a reasonable probability that, absent the errors, the sentencer – including an appellate court, to the extent it independently reweighs the evidence – would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 696.

Counsel's failure to investigate or properly prepare for sentencing resulted in the presentation of essentially no mitigating evidence to the jury at the sentencing phase. Despite counsel's assertion in his opening statement that he would put on other witnesses, Abdur'Rahman and his wife were the sole witnesses at sentencing and their testimony related to the circumstances of the offense for which he was found guilty. It did not address Abdur'Rahman's history of abuse, his mental health treatment, or other relevant aspects of his life. This is so despite the fact that the jury should "'not be precluded from considering, *as a mitigating factor*,

Elizabeth's Hospital, Washington, D.C., following his incarceration for assault on or about the day of his discharge from the Army, despite the fact that part of this information was sent to MTMHI [Middle Tennessee Mental Health Institute] per their request.

10. Testimony and files of trial counsel showed that they failed to investigate and obtain available information concerning petitioner's institutional records while in the federal prison system.

11. Testimony and files of trial counsel showed that they failed to investigate and obtain available information concerning petitioner's psychiatric examination following petitioner's 1972 killing of a fellow prisoner while incarcerated for the assault referenced in paragraph 9 above.

12. Trial counsel has little knowledge of the facts related to the petitioner's 1972 murder conviction.

13. They failed to interview the psychiatrist and psychologist who conducted the MTMHI evaluation until after the trial began.

*Abdur'Rahman*, 999 F.Supp. at 1093. The district court referred to these findings in its opinion partially granting habeas relief, but did not address the presumption of correctness that arguably applied to them under 28 U.S.C. § 2254. Instead, citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984), and *Queen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996), it merely noted that "[t]he ultimate question of whether Petitioner received effective assistance of counsel is a mixed question of law and fact, which is reviewed de novo." *Abdur'Rahman*, 999 F.Supp. at 1092.

This was an accurate statement of the law by the district court, though not a complete one. A close reading of the relevant portion of *Strickland* indicates that while the ultimate question of ineffective assistance of counsel is a mixed question of law and fact, the factual findings of state courts underlying such an analysis are accorded the presumption of correctness:

**Although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d)**, and although district court findings are subject to the clearly erroneous standard of Federal Rule of Civil Procedure 52(a), both the performance and the prejudice components of the ineffectiveness inquiry are mixed questions of law and fact.

*Strickland*, 466 U.S. at 698 (emphasis added). Thus, the state post-conviction trial court's findings of fact underlying its ineffectiveness inquiry should have been presumed correct.

This presumption is not mandatory because a district court may preclude its application upon the finding of any one of the listed exceptions in 28 U.S.C. § 2254(d). However, in order to do so "a habeas court should include in its opinion granting the writ the reasoning which led it to conclude that any of the first seven factors were present, or the reasoning which led it to conclude that the state finding was 'not fairly supported by the record.'" *Sumner*, 449 U.S. at 551. In the recent opinion in *Mitchell v. Rees*, this court discussed this requirement.

We begin with the application of 28 U.S.C. § 2254(d), which establishes a presumption of correctness for factual determinations made by the state courts whose judgments are challenged by the federal habeas petitioner. The Supreme Court, in *Sumner v. Mata*, held that § 2254(d) mandated that the presumption of correctness be applied by the habeas court to a finding of the state appellate court that "'the facts of the present case' did not adequately support respondent's claim." The Court went on to lay down the rule that "a habeas court should include in its opinion granting the writ the reasoning which led it to conclude that any of the first seven factors were present, or the reasoning which led it to conclude that the state finding was 'not fairly supported by the record.'" The reason for this requirement, the Court explained, is that "[n]o court

*Id.* at 687. As noted by the majority, we review this mixed question of law and fact de novo. *See id.* at 698; *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996).

The district court and both Tennessee post-conviction courts that examined this case determined that Abdur'Rahman's counsel's performance was deficient. The state does not challenge this determination. I survey counsel's deficiencies here because I believe that they help illuminate why Abdur'Rahman's sentence of death "resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

Counsel's performance, as it related to preparation for and presentation at the sentencing hearing, was constitutionally inadequate. "[W]hen a client faces the prospect of being put to death unless counsel obtains and presents something in mitigation, minimal standards require some investigation." *Mapes v. Coyle*, 171 F.3d 408, 426 (6th Cir. 1999); *see Baxter v. Thomas*, 45 F.3d 1501, 1512 (11th Cir. 1995) (stating that defense counsel was obligated to investigate mitigating mental health evidence for sentencing). Counsel failed to ask the trial court to declare Abdur'Rahman[1] indigent or to ask the court for funds for investigation or experts; failed to hire an independent mental health expert; failed to investigate the nature of Abdur'Rahman's prior convictions; failed to contact and present available witness testimony from Abdur'Rahman's family at sentencing; failed to investigate Abdur'Rahman's numerous mental health records or educational, military, and prison records; and failed to inquire about Tennessee records regarding Abdur'Rahman's mental health or background or introduce evidence from these at his sentencing hearing. In sum, counsel completely failed to investigate and present Abdur'Rahman's mental health history, his institutional history, or other mitigating evidence.

---

[1] I use Abdur'Rahman's present name throughout when referring to him, even in the context of events that occurred or documents created when the petitioner went by the name of Jones.

**CONCURRING IN PART, DISSENTING IN PART**

R. GUY COLE, JR., Circuit Judge, concurring in part, dissenting in part. Because I would affirm the district court's determination that Abdur'Rahman's counsel was constitutionally ineffective at sentencing and that the writ should be granted as to this issue, I respectfully dissent from that portion of Judge Siler's opinion.

As an initial matter, I agree with Judge Siler that the district court properly ordered an evidentiary hearing, under its discretion to do so, and properly considered the evidence presented at this hearing. I also note that the concurrence's invocation of the bugaboo of overreaching federal courts does not reflect the reality of federal habeas review. *See* 1 FEDERAL COURTS STUDY COMMITTEE, WORKING PAPERS AND SUBCOMMITTEE REPORTS 482 (1990) (reporting that, in 1987 and 1988, only 1.1% of habeas corpus petitioners received a full hearing at the district court).

Abdur'Rahman's counsel was constitutionally ineffective at sentencing due to counsel's utter failure to investigate or present available mitigating evidence. In order to prove ineffective assistance of counsel, Abdur'Rahman must fulfill the familiar two-prong requirement of *Strickland v. Washington*, 466 U.S. 668 (1984).

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

reviewing the grant of an application for habeas corpus should be left to guess as to the habeas court's reasons for granting relief notwithstanding the provisions of § 2254(d)." And in a footnote, the Court further explained that "the 1966 amendments embodied in § 2254(d) were intended by Congress as limitations on the exercise of [federal court] jurisdiction. As we held in *Louisville & Nashville R. Co. v. Mottley*, and have repeatedly since reaffirmed, 'it is the duty of this [C]ourt to see to it that the jurisdiction of the [district court] which is defined and limited by statute, is not exceeded.'"
. . . It was error, therefore, for the district court to dispense with the presumption of correctness embodied in § 2254(d) and to order an evidentiary hearing without providing a written statement of the "reasoning which led it to conclude that any of the first seven factors were present, or the reasoning which led it to conclude that the state finding was 'not fairly supported by the record.'"

*Mitchell*, 114 F.3d at 575-77 (citations omitted). Thus, the district court committed the same error by apparently dispensing with the presumption of correctness without a statement of its reasons for granting relief notwithstanding the provisions of § 2254(d).

Relying solely upon the erroneous argument that the presumption of correctness does not apply to the post-conviction trial court's findings of fact, Petitioner fails to argue that any one of the listed exceptions in § 2254(d) applies and requires that the court dispense with the presumption of correctness. However, he argues that § 2254(d)(8) would entitle him to an evidentiary hearing, pointing to evidence in the record allegedly showing that he did not receive a full and fair hearing in state court at trial, during post-conviction proceedings, and on appeal. The State argues that due to Petitioner's formal presence before the state trial and appellate courts, his ability to call witnesses and otherwise present evidence, and his pursuit of his claims on appeal, he cannot be heard to claim that he did not receive a

full and fair hearing.  This position is correct.  *See Andrews v. Collins*, 21 F.3d 612, 619 (5th Cir. 1994) (noting that the opportunity to present evidence, to present witnesses, and to fully cross-examine prosecution witnesses supports the finding of a full and fair hearing); *see also Sumner*, 449 U.S. at 546 (stating that "[s]ince that court [state appellate court] was requested to determine the issue by respondent [the convicted murderer], we do not think he may now be heard to assert that its proceeding was not a 'hearing' within the meaning of § 2254(d).").  Thus, because Petitioner received a full and fair hearing the presumption of correctness applies.

It is clear that the court erred in not addressing the presumption of correctness as required by *Sumner*, *Strickland*, and *Mitchell*.  However, it is unclear as to whether the district court held that the presumption of correctness did not apply.  This ambiguity arises because the district court ordered an evidentiary hearing and received evidence that was not presented in any of the state court proceedings.  Additionally, it considered the new evidence in its opinion partially granting habeas relief to Petitioner, yet failed to explicitly find whether the new evidence contradicted and possibly rebutted the presumption of correctness, or merely supplemented the post-conviction trial court's findings of fact.

Presumably, however, because the court simply exercised de novo review under its mistaken interpretation of *Strickland* it did dispense with the presumption of correctness.  Thus, the district court erred by failing to recognize that the presumption of correctness applied to the post-conviction trial court's findings of fact and erred by failing to include in its opinion the reasoning why the presumption of correctness did not apply.  Unlike *Mitchell*, however, this error does not require a remand because we hold that the district court properly ordered an evidentiary hearing and properly considered the evidence it heard.

attorneys could have shown such mitigating circumstances as childhood abuse, serious mental illness, and the defendant's good qualities.

In doing so, the district court erred.  Upon authority of *Keeney* and *Mitchell*, the district court could not order an evidentiary hearing until Abdur'Rahman showed cause for his failure to develop the factual record fully in the state courts.  Ordinarily we would vacate the order partially granting the writ of habeas corpus and the order for the evidentiary hearing, *Mitchell*, 114 F.3d at 579, and remand the matter to the district court to afford Abdur'Rahman the opportunity to bring forward evidence establishing cause and prejudice, *Kenney v. Tamayo-Reyes*, 504 U.S. at 11.  In this case, however, such a disposition is unnecessary; the evidence that Abdur'Rahman adduced at the federal evidentiary hearing is plainly insufficient to undermine confidence in the jury's sentence.  *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).  As Judge Siler points out, the additional evidence presented to the habeas court merely supplemented the factual findings made by the post-conviction trial court.  What the state court said in 1995 holds true today:  "It is unrealistic to expect the jury to change the result because of testimony about the petitioner's troubled background and mental illness in the face of a prior murder conviction which is added to two additional aggravating circumstances including the heinousness of the killing."  I therefore concur that the order granting the writ as to Abdur'Rahman's death sentence should be reversed.

## II

In Tennessee's post-conviction courts, petitioner Abdur'Rahman claimed that his trial counsel had rendered ineffective assistance by failing to investigate his mental health and criminal histories sufficiently to paint a sympathetic picture of his abusive childhood and resulting serious mental illness at sentencing. The state court conducted an evidentiary hearing, at which it considered the testimony of one Dr. Barry Nurcombe; Abdur'Rahman's school, military, and prison records; the transcript of a previous trial; records of the Middle Tennessee Mental Health Institute; records of social services departments; the affidavit of Mark Jones, Abdur'Rahman's brother; and a great deal of other evidence. At the conclusion of the hearing, the court held that Abdur'Rahman's trial counsel had been constitutionally deficient—reasonable attorneys would have investigated the accused's mental health and criminal histories. The court concluded, however, that counsel's faulty performance did not prejudice Abdur'Rahman. The evidence introduced at the hearing, the court noted, contained extensive documentation that Abdur'Rahman had had a past of profound violence, but no serious mental illness. Deciding that this information "looks like a mine field for any trial attorney to tiptoe through," the court denied post-conviction relief.

In his petition for federal habeas relief, Abdur'Rahman renewed his contention that trial counsels' deficient performance at sentencing had resulted in prejudice. Over the State's objection, the district court conducted an evidentiary hearing on the ineffective assistance claim. Although the State confronted the district court with *Mitchell*, the court cited an unpublished district court order for the proposition that the granting of an evidentiary hearing is discretionary. The district court proceeded to consider a significant volume of evidence, including the testimony of seven live witnesses, that was not presented to the state courts. Largely on the basis of this evidence, the district court concluded that Abdur'Rahman had been prejudiced because his trial

## 2. Inherent Discretion to Order an Evidentiary Hearing

Applying the presumption of correctness under § 2254(d) is an entirely separate and distinct issue from whether a district court may or is required to order an evidentiary hearing to settle allegedly disputed issues of material fact. However, as a practical matter, when a district court finds that the presumption of correctness does not apply due to one of the listed exceptions in § 2254(d), a hearing is probably warranted. As discussed below, this is an issue that is independent of whether a habeas Petitioner is *entitled* to an evidentiary hearing. This latter issue is not raised by the instant appeal, because the district court properly ordered an evidentiary hearing pursuant to its inherent discretionary authority.

The district court ordered an evidentiary hearing "to resolve the numerous complex factual and legal issues presented." The State argues that the district court abused its discretion in ordering an evidentiary hearing because *Mitchell* does not allow for such a hearing in the absence of a finding of one of the § 2254(d) factors. Alternatively, it argues that Petitioner is not entitled to an evidentiary hearing due to his failure to show either cause and prejudice for the failure to develop the facts in the state proceedings or that a fundamental miscarriage of justice would result from the district court's failure to hold an evidentiary hearing. Petitioner responds by attempting to distinguish *Mitchell* and by arguing that a district court has inherent authority to order an evidentiary hearing to settle claims of ineffective assistance of counsel.

As the above-quoted portion of *Mitchell* shows, this court has held that a district court does not have the authority to order an evidentiary hearing when it fails to properly dispense with the presumption of correctness. Additionally, this court succinctly discussed the cause and prejudice requirements that the State argues are relevant to this appeal:

Because § 2254(d) is an express limitation on the district court's jurisdiction, a district court is without authority to hold an evidentiary hearing on a matter on

which the state court has made findings unless one of the factors contained in § 2254(d) applies. It was error, therefore, for the district court to dispense with the presumption of correctness embodied in § 2254(d) and to order an evidentiary hearing without providing a written statement of the "reasoning which led it to conclude that any of the first seven factors were present, or the reasoning which led it to conclude that the state finding was 'not fairly supported by the record.'"

Once a district court has properly determined that it may dispense with the presumption of correctness mandated by § 2254(d), the court has some discretion in determining whether to hold an evidentiary hearing. However, an [sic] habeas petitioner who has not developed the record in state court is entitled to an evidentiary hearing only if he shows (1) "cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure" or (2) "that a fundamental miscarriage of justice would result from failure to hold a federal evidentiary hearing." Therefore, a district court abuses its discretion by ordering such a hearing without first requiring the petitioner to make the requisite showing.

*Mitchell*, 114 F.3d at 577  (citations omitted).  Thus, strictly on the basis of *Mitchell*, because the district court did not find that one of the factors contained in § 2254(d) applies, the court lacked the authority to order an evidentiary hearing.[3]

---

[3]Petitioner attempts to distinguish *Mitchell* by arguing that the *Batson v. Kentucky*, 476 U.S. 79 (1986), challenge involved therein was based solely upon factual state court findings, whereas the instant case involves an ineffectiveness of counsel claim that was clearly a mixed finding of fact and law.  In turn, Petitioner argues that because the presumption of correctness does not apply in the instant case, *Mitchell* is not applicable and therefore not controlling.  However, as the above-stated conclusion shows, the presumption of correctness does apply to the post-conviction trial court's findings of fact.  Thus, Petitioner's attempt to distinguish *Mitchell* is erroneous.

facts in the state court proceedings, or (2) that not holding an evidentiary hearing would result in a fundamental miscarriage of justice. *Mitchell*, 114 F.3d 571, 579 (6th Cir. 1997). "[A] district court abuses its discretion," we said, "by ordering such a hearing without first requiring the petitioner to make the requisite showing." *Id.* at 577.  We have been joined in this understanding by at least one other Circuit. *See Mathis v. Zant*, 975 F.2d 1493, 1497 (11th Cir. 1992).

Our understanding is buttressed by a case decided by the Supreme Court just this Term, *Williams v. Taylor*.  In *Williams*, the Court interpreted 28 U.S.C. § 2254(e)(2), a statute enacted four years after the decision in *Keeney*. Section 2254(e)(2) provides:  "If the [habeas] applicant has failed to develop the factual basis of a claim in State court proceedings, the court *shall not* hold an evidentiary hearing on the claim unless the applicant" satisfies certain conditions. 28 U.S.C. § 2254(e)(2) (emphasis supplied).  In deciding the level of fault connoted by the term "fail", the Court determined that the opening clause of § 2254(e)(2) is essentially a codification of the holding in *Keeney*: "Congress intended to preserve at least one aspect of *Keeney*'s holding: prisoners who are at fault for the deficiency in the state-court record must satisfy a heightened standard to obtain an evidentiary hearing." *Williams*, 120 S.Ct. at 1489.  As this language suggests, the Supreme Court itself does not read *Keeney* as deciding when a petitioner is *entitled* to an evidentiary hearing; rather, the case sets forth what a petitioner must do in order to obtain one. *See also id.* at 1488 ("We required the prisoner [in *Keeney*] to demonstrate cause and prejudice excusing the default before he *could* receive a hearing on his claim . . . ." (emphasis supplied)).

*Keeney*, *Mitchell*, and *Williams* thus command that a petitioner who has not developed facts in state court must justify his failure to do so through a showing of cause and prejudice before he may present those facts to a federal habeas court.

of factual questions in the first instance, *Townsend* creates "incentives for the deferral of factfinding to later federal court proceedings"—which can only "degrade the accuracy and efficiency of judicial proceedings." *Id.* at 9.

Similarly, the *Keeney* Court rested its holding on a symmetry between the jurisprudence of procedural default and that governing factfinding in the habeas courts. "There is no good reason to maintain in one area of habeas law a standard that has been rejected in the area in which it was principally enunciated," wrote the Court. "And little can be said for holding a habeas petitioner to one standard for failing to bring a claim in state court and excusing the petitioner under another, lower standard for failing to develop the factual basis of that claim in the same forum." *Id.* at 10. A dogged fidelity to *Townsend* disrupts this symmetry. Absent a showing of cause and prejudice, a habeas court would have no discretion to entertain a claim that had been procedurally defaulted in state court, but would have discretion to conduct an evidentiary hearing on a claim raised but insufficiently developed in state court, even where the petitioner did not show cause and prejudice for his failure to develop the factual record in the state court. Given the importance that the *Keeney* Court ascribed to uniformity in the law of habeas corpus, that cannot be a correct reading of the case.

This Court has recognized that *Keeney* implicitly withdrew the discretion that *Townsend* had granted. In *Mitchell v. Rees*,[1] we reversed a district court for ordering an evidentiary hearing on a habeas petitioner's *Batson* challenge without requiring the petitioner to establish either (1) cause and prejudice for his failure to adequately develop the material

---

[1] To the extent that *Mitchell* suggested that a district court is without authority to hold an evidentiary hearing without first finding that one of the factors listed in 28 U.S.C. § 2254(d) applies, I agree with Judge Siler that its statement is "overbroad". *See Keeney*, 504 U.S. at 1720 n.5 (noting that § 2254(d) "indicates no assumption that the presence or absence of any of the statutory exception will determine whether a hearing is held").

Petitioner argues that *Mitchell* is inconsistent with both Supreme Court authority and other authority emanating from this Circuit which recognizes that district courts always have the inherent authority to order evidentiary hearings to settle disputed issues of material fact. Petitioner cites and quotes to *Townsend v. Sain*, 372 U.S. 293 (1963), *overruled by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), for the proposition that "the power of inquiry on federal habeas review is plenary." *Id.* at 312. Although *Townsend* was partially overruled as discussed below, the Court set out six situations in which a district court on habeas review must hold an evidentiary hearing. *Id.* at 313-14. Additionally, the Court stated that:

> [t]he purpose of the test is to indicate the situations in which the holding of an evidentiary hearing is mandatory. In all other cases where the material facts are in dispute, the holding of such a hearing is in the discretion of the district judge. If he concludes that the habeas applicant was afforded a full and fair hearing by the state court resulting in reliable findings, he may, and ordinarily should, accept the facts as found in the hearing. But he need not. In every case he has the power, constrained only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim.

*Id*. at 318. Thus, it seems that despite the holding in *Mitchell*, a district court does have the inherent authority to order an evidentiary hearing even if the factors requiring an evidentiary hearing are absent.

This issue was further discussed in *Keeney*, which partially overruled *Townsend* by holding that the cause and prejudice test applies to a habeas petitioner's failure to develop material facts at the state court level. *See Keeney*, 504 U.S. at 5. In so holding, the Court discussed in a footnote the relation between the instances listed in *Townsend* in which a district court must hold an evidentiary hearing and the exceptions to the presumption of correctness listed in § 2254(d):

First, it is evident that § 2254(d) does not codify *Townsend's* specifications of when a hearing is required. *Townsend* described categories of cases in which evidentiary hearings would be required. Section 2254(d), however, does not purport to govern the question of when hearings are required; rather, it lists exceptions to the normal presumption of correctness of state-court findings and deals with the burden of proof where hearings are held. The two issues are distinct, and the statute indicates no assumption that the presence or absence of any of the statutory exceptions will determine whether a hearing is held.

*Id.* at 10 n.5. Thus, this passage indicates the continuing viability of *Townsend's* statement that a district court may order an evidentiary hearing to settle disputed issues of material fact even following the adoption of the exceptions to the presumption of correctness listed in § 2254(d).

Thus, *Mitchell's* statement that a district court is without authority to order an evidentiary hearing in the absence of one of the exceptions listed in § 2254(d) is overbroad in that it fails to recognize the inherent authority that a district court always has in habeas cases to order evidentiary hearings to settle disputed issues of material fact. This court has previously recognized this principle. *See Sims v. Livesay*, 970 F.2d 1575, 1579 (6th Cir. 1992) (quoting *Townsend* for the proposition that a district judge's power to receive evidence on a habeas petitioner's constitutional claim is only constrained by his sound discretion). Other Circuits have likewise recognized this inherent discretion. *See Seidel v. Merkle*, 146 F.3d 750, 754-55 (9th Cir. 1998); *Clemmons v. Delo*, 124 F.3d 944, 952 (8th Cir. 1997); *Pagan v. Keane*, 984 F.2d 61, 63-65 (2d Cir. 1993).

Of course, recognizing a district court's inherent discretion to order an evidentiary hearing is an issue that is separate and distinct from whether a habeas petitioner is *entitled* to an evidentiary hearing. As Petitioner correctly points out, *Keeney* and *Mitchell* stand for the proposition that a:

The *Keeney* Court granted certiorari to decide "the correct standard for excusing a habeas petitioner's failure to develop a material fact in state-court proceedings." *Keeney*, 504 U.S. at 5. Ultimately, the Court determined that "the 'cause-and-prejudice' standard embodies the correct accommodation between the competing concerns implicated in a federal court's habeas power." *Id.* at 7. As a purely textual matter, nothing in the Court's framing of the question, or in its resolution of that question, suggests that the Court was restricting its holding to those circumstances in which a habeas petitioner is "entitled" to an evidentiary hearing.

More importantly, the logic that the Court followed to arrive at the cause-and-prejudice standard will not admit of such a construction. The Court based its holding on a quintet of values embedded in our federal system: comity, finality, judicial economy, channeling of claims to the appropriate forum, and uniformity in the law of habeas corpus. *Id.* at 8-10. It is difficult to understand how any of these values would be served by a system that entitled state prisoners to evidentiary hearings only upon a showing of cause and prejudice, but nevertheless invested the habeas courts with bottomless discretion to order hearings where they are not required. Such a system still would deny the States the opportunity to correct their own constitutional errors, would multiply the opportunities to relitigate convictions, and would consume scarce judicial resources.

Of particular concern is the disruption to the values of proper forum allocation and uniformity that would attend survival of the *Townsend* doctrine. The Supreme Court likened the former value to the requirement of exhaustion, noting: "Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claim on the merits." *Id.* at 10. A doctrine that allows a habeas court to conduct an evidentiary hearing where the petitioner has, without cause, failed to develop facts in state court re-engineers this two-way street into a blind alley. Even though the state court is the appropriate forum for resolution

and adequate state procedural rule, federal habeas review of the claims is *barred* unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750 (emphasis supplied). In view of the significant harm suffered by States when federal courts failed to respect state procedural rules, federal court "discretion" to consider a habeas petitioner's federal claims was inappropriate when the petitioner had deprived the state courts of an opportunity to address those claims in the first instance.

*Townsend*'s holding with respect to evidentiary hearings, too, was overruled. Just as a district court had no discretion to consider federal claims that a habeas petitioner had not submitted to the state courts, neither could it have discretion to allow a petitioner to develop facts that had not been fairly presented to the state courts. *See Keeney v. Tamayo-Reyes*, 504 U.S. 1, 7-8 (1992) (stating that it is "irrational to distinguish between failing to properly assert a federal claim in state court and failing in state court to properly develop such a claim"). Thus, in *Keeney v. Tamayo-Reyes*, the Supreme Court applied the cause-and-prejudice standard to determine whether a state prisoner who had failed to develop material facts in state court was entitled to an evidentiary hearing on habeas corpus. *Id.* at 11.

*Keeney* was a case in which a petitioner sought a federal evidentiary hearing but did not receive one. *See id.* at 4. Taking his cue from this fact, Judge Siler interprets *Keeney* to mean that a showing of cause and prejudice *requires* a habeas court to conduct an evidentiary hearing, but that even in the absence of such a showing, the court retains discretion to hold a hearing. *See ante* at __. In my view, neither the language nor the reasoning of *Keeney* will support this interpretation. In addition, the Supreme Court's recent pronouncements in *Williams v. Taylor*, 120 S. Ct. 1479 (2000), strongly corroborate a reading of *Keeney* that limits the authority of habeas courts to order evidentiary hearings.

habeas petitioner who has not developed the record in state court is entitled to an evidentiary hearing only if he shows (1) "cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure" or (2) "that a fundamental miscarriage of justice would result from failure to hold a federal evidentiary hearing."

*Mitchell*, 114 F.3d at 577 (quoting *Keeney*, 504 U.S. at 11-12). Because the district court properly ordered an evidentiary hearing pursuant to its inherent authority to do so, the issue of whether Petitioner is entitled to an evidentiary hearing is irrelevant and will not be addressed.

Following the oral arguments in this case, the Supreme Court decided *Williams v. Taylor*, 120 S.Ct. 1479 (2000), in which it interpreted the fault requirement of a provision of the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA"). The specific provision that was at issue states that "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows [the existence of two limited exceptions]." 28 U.S.C. § 2254(e)(2). While the use of the word "shall" in this provision may evidence the Congressional intent to remove a district court's inherent discretion to order an evidentiary hearing in the absence of either of the provided exceptions, this provision does not apply to the instant appeal because Petitioner filed his habeas petition on the day before the enactment of AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997) (holding that AEDPA only applies to petitions filed after the date of its enactment). While there may not be any inherent discretion to order an evidentiary hearing following the enactment of AEDPA, we decline to specifically determine whether AEDPA has so altered the law. *Williams* does not, therefore, lead to the conclusion that the district court erred below.

Additionally, although *Williams* characterized the *Keeney* decision as "requir[ing] the prisoner to demonstrate cause and

prejudice excusing the default before he could receive a hearing on his claim," *id*. at 1488, the use of the word "could" does not imply that if the district court ordered a hearing based upon its inherent discretion, it erred. Thus, the distinction between when a petitioner is entitled to a hearing, which was at issue in *Keeney*, versus whether a district court has the inherent discretion to order a hearing, is still intact following *Williams*.

### 3.  Ineffective Assistance of Counsel

Recognizing that in a habeas case a district court has the inherent authority to order an evidentiary hearing to settle disputed issues of material fact obviously raises the issue of how any evidence received by the district court is to be considered if the court holds that the presumption of correctness under § 2254(d) applies. The post-conviction trial court concluded that Petitioner's trial counsel's performance was deficient during the sentencing phase due to the failure to investigate and obtain information about Petitioner's background and mental health. However, it went on to hold that Petitioner suffered no prejudice at the sentencing stage because the evidence that he would have offered to support a finding of mitigating circumstances was both helpful and harmful and that it would not have been a prudent strategy to present the evidence. The Tennessee Court of Criminal Appeals affirmed that decision. *See Jones*, 1995 WL 75427, at *2. The State argues that in the absence of the evidence presented at the evidentiary hearing below, the state court findings of fact show deficient performance on the part of Petitioner's trial counsel, but do not show any prejudice from that deficient performance. Petitioner responds by arguing that the state court findings of fact do show that he was prejudiced by trial counsel's deficient performance.

*Strickland* set forth the test for determining when the ineffective assistance of counsel so prejudices a defendant that his sentence must be set aside. First, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance of counsel under the

in this regard only by requiring that evidentiary hearings be held under six circumstances that would call into question the integrity of state court factfinding. *Id.* at 313.

The generation following *Fay* and *Townsend* has witnessed a sea-change in the law of habeas corpus. This change has been spurred by an increased attentiveness to considerations of comity and the values of "our federal system." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). The idealistic predictions of *Fay* and *Townsend* that federal district judges, mindful of their delicate role in the maintenance of proper federal-state relations, would not employ their discretion to subvert the integrity of state criminal justice, had been proven wrong. *Townsend*, 372 U.S. at 318; *see also Fay*, 372 U.S. at 433 (suggesting that the plenary power of inquiry on federal habeas corpus would not create incentives for defendants to withhold claims in state proceedings). The law reviews and the popular press echoed with calls for the unelected federal judiciary to desist from frustrating the outcomes of democratic process, particularly in capital cases. *See generally* Barry Friedman, *The History of the Countermajoritarian Difficulty, Part One:  The Road to Judicial Supremacy*, 73 N.Y.U. L. Rev. 333 (1998) (tracing the history of the countermajoritarian difficulty); *see also* Thomas Goldsmith, *Activists Want Nixon Impeached: Group Takes Message to Centennial Park*, The Tennessean, Mar. 26, 2000, at 1B (noting current calls for the impeachment of a federal district court judge on the ground that his personal bias against the death penalty makes him unfit to hear cases in which it is a factor). *Fay* was overruled. *See Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977).

Recognizing that in a federal system, the States should have the first opportunity to address and correct violations of state prisoners' federal rights, and that *Fay* had undervalued the important interests served by state procedural rules, the Supreme Court replaced *Fay*'s "deliberate bypass" standard with a cause-and-prejudice inquiry. *Coleman*, 501 U.S. at 731, 750. "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent

## CONCURRENCE

ALICE M. BATCHELDER, Circuit Judge, concurring. The habeas court in this case believed that it had essentially unlimited discretion to conduct an evidentiary hearing on the petitioner's ineffective assistance of counsel claim. Such discretion is, however, an artifact of a bygone era. As this court recognized in *Mitchell v. Rees*, the modern Supreme Court has substantially pared back the ability of federal courts to retry cases already tried in the state courts. I would therefore hold that the district court in this case improvidently granted the petitioner an evidentiary hearing. I concur in all other parts of Judge Siler's opinion.

### I

In 1963, the Supreme Court invested federal habeas courts with broad discretion in most aspects of collateral review of state criminal judgments. Contending that the common law conceived of the Great Writ as a remedy available for any kind of governmental detention contrary to fundamental law, the Court in *Fay v. Noia* declared that "federal court jurisdiction is conferred by the allegation of an unconstitutional restraint and is not defeated by anything that may occur in . . . state court proceedings." *Fay*, 372 U.S. 391, 426 (1963). This broad conception led the Court to hold that even a petitioner who had procedurally defaulted his claims in state court could obtain habeas relief, subject to the district court's "discretion" to deny relief when the orderly procedure of the state courts had been deliberately bypassed. *Id.* at 434, 438. In parallel fashion, the Court empowered federal habeas courts to conduct evidentiary hearings even when a petitioner had failed to develop the facts in state court proceedings. "In every case," the Supreme Court wrote in *Townsend v. Sain*, the district judge "has the power, constrained only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim." *Townsend*, 372 U.S. 293, 318 (1963). *Townsend* limited the discretion of habeas courts

Constitution." *Strickland*, 466 U.S. at 692. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Additionally,

> [w]hen a defendant challenges a death sentence . . . the question is whether there is a reasonable probability that, absent the errors, the sentencer–including an appellate court, to the extent it independently reweighs the evidence--would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.

*Id.* at 695. Finally, "[w]hen a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

Of course, as stated above, the prejudice prong of the *Strickland* test is a mixed question of law and fact that is reviewed de novo.[4] Nevertheless, the state court findings of fact should be accorded the presumption of correctness under § 2254(d). The post-conviction trial court held that Petitioner's trial counsel had failed to adequately investigate Petitioner's background and mental history, making the factual findings set forth above in the process. Based upon these findings of fact, the post-conviction trial court found that Petitioner did not suffer any prejudice from the deficient performance, a holding that the Tennessee Court of Criminal Appeals affirmed:

> If the trial attorneys had investigated further, they would have found that the appellant had a long history of

---

[4] Neither party argues that any error has ever been committed with respect to the performance prong of the *Strickland* test.

violent behavior and anti-social personality disorders. We agree with the trial judge's finding that trial counsel were ineffective in failing to further investigate the background of the accused under the circumstances, but we also agree with Mr. Barrett's testimony and the trial judge's conclusion that it probably would not have been the most prudent trial strategy to use proof of appellant's history of violent behavior and anti-social personality disorders at either the guilt or innocence phase or at the sentencing phase of the trial. As the Supreme Court of the United States noted in *Strickland v. Washington*, 466 U.S. 668, 700 (1984), "Given the overwhelming aggravating factors, there is no reasonable probability that the omitted evidence would have changed the conclusion that the aggravating circumstances outweighed the mitigating circumstances and, hence, the sentence imposed." Indeed proof of the appellant's psychological history in all probability would not have changed the result, especially in light of appellant's conviction of prior malicious killing while in a federal penitentiary and the other aggravating factors. A decision of counsel relating to a choice of trial or appellate strategy, even if it were proven improvident, could not form the basis for an ineffective assistance of counsel claim.

*Jones,* 1995 WL 75427, at *2.

Petitioner argues that this conclusion was in error, citing *Lockett v. Ohio*, 438 U.S. 586, 604 (1978), for the proposition that the capital sentencer may "not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence of less than death." *Id.* Petitioner's reliance upon *Lockett* is misplaced as it involved the presentation of evidence of mitigating circumstances that was deemed not to fit within Ohio's narrow death penalty statute. *See id.* at 594-95. In the instance case, Petitioner did not "proffer" any evidence that the jury was precluded from considering. Petitioner also

Disorder, prejudiced him at the guilt stage of his trial. The district court held that this was not prejudicial because there was no evidence that Petitioner could have produced an expert to testify that he was insane at the time of the stabbings, or even if one did so testify that testimony would have been effectively countered by evidence from the Middle Tennessee Mental Health Institute from an examination authorized prior to trial that there was no basis for Petitioner to invoke an insanity defense. A review of this MTMHI document shows that it would be compelling evidence against any insanity defense. Thus, Petitioner cannot show that there is a reasonable probability that the factfinder would have had a reasonable doubt respecting guilt if his trial counsel had investigated and presented evidence of his mental history.

The district court did not err in concluding that Petitioner suffered no prejudice at the guilt stage due to his counsel's deficient performance.

### III. CONCLUSION

The district court's finding of prejudice at the sentencing stage is REVERSED and the judgment granting the petition for a writ of habeas corpus as to Petitioner's death sentence is VACATED. The district court's judgment denying the petition for a writ of habeas corpus as to Petitioner's conviction is AFFIRMED.

sure whether counsel was influenced in his basic strategic decisions by the interests of the employer who hired him." *Id.* at 272. In the instant appeal, the record below does not compel the same conclusion. Given the district court's conclusion that Barrett did not protect the interests of Boyd or the SEGM, Petitioner cannot show that Barrett was actively representing conflicting interests and that he is therefore not entitled to a presumption of prejudice at the guilt stage.

## 2. Prejudice

Petitioner argues that the district court erred in concluding that he did not suffer any prejudice by his trial counsel's deficient performance of delaying his preparation for trial, by the failure to present forensic evidence, and by the failure to present evidence concerning Petitioner's mental history.

First, Petitioner argues that Barrett's decision not to work on the case until he received the balance of the retainer prejudiced him by the lack of any meaningful work being performed and by depriving him of representation during his psychological evaluation. However, Petitioner points to no specific evidence that would raise a reasonable probability that the factfinder would have had a reasonable doubt respecting guilt in the absence of this delay.

Second, Petitioner argues that he was prejudiced by his trial counsel's failure to investigate and present a lab report showing that no blood was found on the clothes he was allegedly wearing during the offense. The district court correctly held that such evidence would not have created a reasonable doubt about guilt because although there was testimony that Petitioner was wearing a long dark coat on the night of the offense, there was no evidence that at the time of the homicide Petitioner was wearing the clothes seized later from his apartment. *See Abdur'Rahman*, 999 F.Supp. at 1096.

Finally, Petitioner argues that trial counsel's failure to investigate his mental history, especially his diagnoses of Post-Traumatic Stress Disorder and Borderline Personality

relies upon *Glenn v. Tate*, 71 F.3d 1204, 1211 (6th Cir. 1995), for the proposition that "[o]ur sister circuits have had no difficulty in finding prejudice in sentencing proceedings where counsel failed to present pertinent evidence of mental history and mental capacity." *Id.*

Petitioner did not suffer prejudice sufficient to create a reasonable probability that the sentencing jury would have concluded that the balance of aggravating and mitigating factors did not warrant death. We reach this conclusion even considering the evidence presented at the evidentiary hearing below. When a district court in a habeas case orders an evidentiary hearing to settle disputed issues of material fact pursuant to its inherent authority to do so, that evidence could be offered for a variety of purposes, though the most common presumably would be to rebut the presumption of correctness accorded to state court findings of fact. *See Groseclose v. Bell*, 130 F.3d 1161, 1163-64 (6th Cir. 1997) (stating that "federal courts must defer to state court factual findings, according a presumption of correctness that the petitioner may rebut only with clear and convincing evidence."). However, in the instant case, the additional evidence and factual findings made by the district court do not contradict the factual findings made by the post-conviction trial court. *Compare Abdur'Rahman*, 999 F.Supp. at 1093, *with id.* at 1094-1102. Instead, the additional evidence seems to merely supplement the factual findings made by the post-conviction trial court. *See Pollinzi v. Estelle*, 628 F.2d 417, 418 (5th Cir. 1980) (allowing evidence obtained at an evidentiary hearing to supplement the trial transcript and record).

Even considering the supplemental evidence heard by the district court and outlined in its opinion, Petitioner did not suffer prejudice at the sentencing phase due to his trial counsel's deficient performance. While it is true that much of the supplemental evidence contains mitigating evidence that a sentencer might find to be compelling, the same evidence likewise has aspects that would be compelling evidence of aggravating circumstances. In particular, the supplemental evidence contained a description of Petitioner's motive for

killing a fellow prison inmate and a history of violent character traits. Therefore, we agree with the post-conviction trial court and the Tennessee Court of Criminal Appeals that because the mitigating evidence that could have been introduced also contained harmful information, Petitioner did not suffer prejudice sufficient to create a reasonable probability that the sentencing jury would have concluded that the balance of aggravating and mitigating factors did not warrant death. Thus, the decision of the district court that Petitioner was prejudiced at the sentencing stage due to his counsel's deficient performance is reversed.

### 4. Heinous, Atrocious, or Cruel Instruction

On cross-appeal, Petitioner argues that the "heinous, atrocious, or cruel" aggravating circumstance instruction that was given to the sentencing jury was unconstitutionally vague and overbroad, relying upon *Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998), and *Houston v. Dutton*, 50 F.3d 381 (6th Cir. 1995). The district court concluded that even if the instruction was vague, any error caused thereby was cured by the Tennessee Supreme Court's application of a constitutional narrowing construction to the aggravating circumstance. The State argues that if the instruction was unconstitutionally vague, any error was harmless due to the jury's finding of other aggravating circumstances.

In *Maynard v. Cartwright*, 486 U.S. 356 (1988), the Court addressed the vagueness of a similar instruction and set forth the following standard to employ:

Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis. Claims of vagueness directed at aggravating circumstances defined in capital punishment statutes are analyzed under the Eighth Amendment and characteristically assert that the challenged provision fails adequately to inform juries what they must find to impose the death penalty and as a result leaves them and appellate courts with the kind of open-ended discretion

adverse to Petitioner, Mr. Barrett certainly did not protect the interests of SEGM or Mr. Boyd during the trial and sentencing." *Abdur'Rahman*, 999 F.Supp. at 1091. The district court noted that Barrett elicited testimony about the SEGM from Beard on cross-examination, mentioned the Petitioner's connection with the group during his closing argument, and issued subpoenas for Boyd and Beard to appear at the trial. Thus, it cannot be said that Barrett was actively representing conflicting interests.

Petitioner's reliance upon *Wood v. Georgia*, 450 U.S. 261 (1981), is misplaced. *Wood* involved an Equal Protection challenge to the imprisonment of three probationers because of their inability to make installment payments on fines. The Court did not resolve this issue because it remanded for a determination of whether a conflict of interest existed within a third-party payor arrangement. The probationers were three employees of an adult movie theater and bookstore who had been convicted of distributing obscene materials. As pointed out by Petitioner, the Court noted that "'[a] conflict of interest inheres in every such situation [a criminal defendant being represented by a lawyer hired and paid by a third party] . . . It is inherently wrong to represent both the employer and the employee . . . it is also inherently wrong for an attorney who represents only the employee to accept a promise to pay from one whose criminal liability may turn on the employee's testimony." *Id*. at 271 n.15.

Unlike the instant case, in *Wood* the attorney was representing both the employer and the employees: "[s]ince it was this decision [not to pay the fines] by the employer that placed petitioners in their present predicament, and since their counsel has acted as the agent of the employer and has been paid by the employer, the risk of conflict of interest in this situation is evident." *Id.* at 267. Additionally, the statement from *Wood* upon which Petitioner so heavily relies was contained in a footnote to that opinion and was not the basis of the Court's decision to remand for an evidentiary hearing to determine whether a conflict of interest existed. Instead, the Court stated that "[o]n the record before us, we cannot be

The prejudice prong of *Strickland* relating to ineffectiveness of counsel at the guilt phase asks "the question . . . whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. As stated above, the prejudice prong of *Strickland* is a mixed question of law and fact subject to de novo review. *See id*. at 698. Petitioner's claims must be evaluated keeping in mind the compelling incriminating testimony of both Miller and Norman. Additionally, Petitioner confessed to the crime at the sentencing stage. *See Abdur'Rahman*, 990 F.Supp at 1086.

### 1. Conflict of Interest

Petitioner argues that he need not show any prejudice as defined by *Strickland* because under *Cuyler v. Sullivan*, 446 U.S. 335 (1980), "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain [habeas] relief." *Id*. at 349-50. Petitioner argues that the third-party fee arrangement created a conflict of interest for his trial counsel because Boyd, the source of payment, was involved in the crime due to having allegedly supplied the shotgun used by Petitioner. However, the next sentence in *Cuyler* is dispositive of Petitioner's claim. *Cuyler* strictly requires that "until a defendant shows that his counsel actively represented conflicting interests, he has not established a claim of ineffective assistance. . . . [T]he possibility of conflict is insufficient to impugn a conviction." *Id*. at 350.

Petitioner fails to show that his trial counsel was actively representing conflicting interests. At most, Petitioner's trial counsel delayed the preparation of his case for too long in anticipation of receiving the balance of his retainer fee. Though Petitioner argues that he was adversely affected by the conflict of interest, he does not allege that his trial counsel was actively representing conflicting interests. Additionally, Petitioner could not make such a showing because as the district court noted, "even if Mr. Boyd's interests were

which was held invalid in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

*Furman* held that Georgia's then-standardless capital punishment statute was being applied in an arbitrary and capricious manner; there was no principled means provided to distinguish those that received the penalty from those that did not. Since *Furman*, our cases have insisted that the channeling and limiting of the sentencer's discretion in imposing the death penalty is a fundamental constitutional requirement for sufficiently minimizing the risk of wholly arbitrary and capricious action.

*Id.* at 361-62 (citations partially omitted).

The death penalty instruction in the instant case stated:

No death penalty shall be imposed unless you unanimously find that the State during the trial, and/or during the sentencing hearing, has proven beyond a reasonable doubt one or more of the following specific statutory aggravating circumstances:
* * * * * *
(2) the murder was especially heinous, atrocious or cruel, in that it involved torture or depravity of mind;
* * * * * *
In determining whether or not the State has proved aggravating circumstance number two above, you are governed by the following definitions. You are instructed that the word heinous means grossly wicked, or reprehensible, abominable, odious, vile. Atrocious means extremely evil or cruel, monstrous exceptionally bad, abominable. Cruel means disposed to inflict pain or suffering, causing suffering, painful--causing suffering--excuse me--painful. Torture means the infliction of severe physical or mental pain upon the victim while he or she remains alive and conscious. Depravity means moral corruption, wicked, or preverse (sic) act.

*Abdur'Rahman*, 990 F.Supp. at 987.

In *Maynard*, the Court held that an instruction including as an aggravating factor that the murder was "especially heinous, atrocious, or cruel" was unconstitutionally vague, though the Court left open the possibility that certain limiting constructions of that instruction would be constitutionally acceptable. *Id.* at 364-65. Additionally, it noted that "some kind of torture or serious physical abuse" limiting instruction may pass constitutional muster. *See id.* Following *Maynard*, this court held unconstitutionally vague an instruction stating a specified statutory aggravating circumstance as: "[t]he murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind." *Houston*, 50 F.3d at 387.

We decline to pass on the constitutionality of the instruction in this case because any error therein was harmless. "[W]henever an aggravating factor has been invalidated in a weighing state,[5] the sentence must be reweighed or analyzed for harmless error if the sentence is to be affirmed." *Coe*, 161 F.3d at 334. The *Coe* court went on to state that:

> In a weighing state . . . when a court invalidates one of the aggravators, it has removed a mass from one side of the scale. There is no way to know if the jury's analysis—how the aggravating and mitigating circumstances balanced—would have reached the same result even without the invalid factor.
>
> . . .
>
> [I]t is only when the "death sentence has been infected by a constitutionally . . . invalid aggravating factor" that state reweighing is required to preserve the verdict. By definition, though, an error that is harmless does not

---

[5] "Tennessee is a 'weighing' state—that is, the jury determines whether any aggravating circumstances have been established beyond a reasonable doubt by the State and then balances this against any mitigating circumstances found by the individual jurors. If the jury unanimously finds that the aggravators outweigh the mitigators, death must be imposed." *Houston v. Dutton*, 50 F.3d 381, 387 (6th Cir. 1995).

*Coe*, 161 F.3d at 338. The same can be said of the instructions in the instant case. No statement therein can be said to require unanimity as to the presence of a mitigating factor. Indeed, Petitioner merely argues that the proximity of the terms "unanimous" and "mitigating circumstances" could have led the jury to misinterpret their obligation. This is not enough to create a reasonable likelihood that the jury applied the challenged instruction in a way that prevented the consideration of constitutionally relevant evidence.[7]

## B. Petitioner's Cross-Appeal Challenging the Denial of his Petition for the Writ of Habeas Corpus as to his Conviction

On cross-appeal, Petitioner argues that the district court's conclusion that he suffered no prejudice from his trial counsel's deficient performance at the guilt stage was erroneous. First, Petitioner argues that due to his trial counsel's conflict of interest and wholly inadequate representation,[8] prejudice can be presumed and therefore need not be shown. Second, Petitioner argues that he did in fact suffer prejudice by trial counsel's delay in preparing for his trial, by the failure to present forensic evidence, and by the failure to present evidence concerning Petitioner's mental history. In response, the State argues that there was no actual conflict of interest and that Petitioner suffered no prejudice because he cannot show a reasonable probability that the result of the proceeding would have been different in the absence of trial counsel's deficient performance.

---

[7] Additionally, as the district court found, there was no mitigating evidence presented that the jury would have been precluded from properly considering even if the instructions were misinterpreted to require unanimity as to the existence of a mitigating factor.

[8] Petitioner argues that he is entitled to habeas relief on his conviction due to his trial counsel's inadequate performance without having to show prejudice under *United States v. Cronic*, 466 U.S. 648 (1984), and *Rickman v. Bell*, 131 F.3d 1150 (6th Cir. 1997). However, Petitioner points to no facts supporting a claim of wholly inadequate representation.

The jury must include and reduce to writing the specific statutory aggravating circumstance or circumstances so found. Further, the jury must include in its finding that the statutory aggravating circumstance or circumstances so found outweigh any mitigating circumstances. Upon such unanimous finding, each member of the jury shall affix his or her signature to the said written finding, and then return said written verdict to the Court.

If the jury unanimously determines that no statutory aggravating circumstance or circumstances have been proven by the State beyond a reasonable doubt; or if the jury unanimously determines that the statutory aggravating circumstance or circumstances have been proved by the State beyond a reasonable doubt, but that the said circumstance or circumstances do not outweigh any mitigating circumstances, the punishment shall be life imprisonment.

*Abdur'Rahman*, 990 F.Supp. at 993. Additionally, at the end of the instructions the trial court stated that "[t]he verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous." *Id*. at 993-94.

*Coe* is dispositive of this issue. In *Coe*, the jury was similarly told that to impose the death sentence its verdict must be unanimous. *See Coe*, 161 F.3d at 337. This court held:

We find that the instructions challenged by Coe do not violate Mills. Their language requires unanimity as to the results of the weighing, but this is a far different matter than requiring unanimity as to the presence of a mitigating factor. Nothing in this language could reasonably be taken to require unanimity as to the presence of a mitigating factor. The instructions say clearly and correctly that in order to obtain a unanimous verdict, each juror must conclude that the mitigators do not outweigh the aggravators.

"infect" the sentence and does not require reweighing by the state.

. . .

We turn, therefore, to analyze this error for harmfulness. The question we must ask is whether the error "had substantial and injurious effect or influence in determining the jury's verdict."

*Id.* at 334-35. In *Coe*, the error was deemed harmless because the jury made the narrow finding that "the murder was especially heinous, atrocious, or cruel and involved torture," when it had been charged to find that the murder was "especially heinous, atrocious, or cruel in that it involved torture or depravity of mind." *Id*. at 335.

Unfortunately, the jury's verdict form in the instant case was not preserved. However, the Supreme Court of Tennessee made the factual finding that the jury had found the three aggravating circumstances as set forth above in the Background section. *See State v. Jones*, 789 S.W.2d 545, 550 (Tenn. 1990). These factual findings are accorded the presumption of correctness under 28 U.S.C. § 2254(d). *See Sumner*, 449 U.S. at 546 (stating that § 2254(d) "makes no distinction between the factual determinations of a state trial court and those of a state appellate court."). Additionally, Petitioner has neither offered any argument as to why this presumption should not apply, nor any evidence that the jury did not find the three aggravating circumstances.

As the State correctly points out, there was ample evidence to support the aggravating circumstances that Petitioner had been previously convicted of one or more felonies involving the use or threat of violence to the person and that the instant murder was committed while the Petitioner was engaged in committing, or attempting to commit, any first degree murder or robbery. *See State v. Jones*, 789 S.W.2d at 550 (stating that "[t]here is no doubt that the evidence in this case was sufficient to support each of the aggravating circumstances found by the jury."). As quoted above, the *Coe* court found that removing one aggravating circumstance from the

sentencing calculus in a weighing state normally would require a re-weighing of the aggravating and mitigating factors. *See Coe*, 161 F.3d at 334. However, in the instant case, as the district court found, "[t]his is a case of no mitigating evidence--none--being offered to the jury despite its availability and abundance." *Abdur'Rahman*, 999 F.Supp. at 1101. Thus, even if the heinous, atrocious, or cruel aggravator is removed form the calculus, there is no mitigating evidence to weigh against the remaining prior felony conviction and felony murder aggravators. Therefore the error was harmless in that it did not have a substantial and injurious effect or influence in determining the jury's verdict.[6]

### 5. Petitioner's Unanimity Objection to the Sentencing Instructions

Petitioner argues that the sentencing instructions improperly led the jurors to believe that they had to unanimously find any mitigating circumstances and did not specifically instruct them otherwise. Although no direct instruction was given requiring that the jurors find the existence of each mitigating factor unanimously, Petitioner argues that the jury was repeatedly informed that their decisions had to be unanimous, but were not instructed that they did not have to be unanimous as to mitigating circumstances. The district court held that "there is not a reasonable likelihood that the jury interpreted the instructions to require unanimity as to mitigating circumstances. . . . [t]his Court is not persuaded that silence as to finding a mitigating circumstance would likely lead the jury to believe that unanimity was required in this case." *Abdur'Rahman*, 990 F.Supp. at 994. This holding was correct.

---

[6]This conclusion is not affected by our holding that the district court properly considered the evidence it obtained during the evidentiary hearing because although that evidence contained mitigating circumstances that could have been offered at the sentencing stage, Petitioner does not argue that a re-weighing is necessary on this basis. Thus, in terms of possible re-weighing, we look only to the evidence presented at the sentencing stage.

In *Mills v. Maryland*, 486 U.S. 367 (1988), the Court held that sentencing instructions that create a substantial likelihood that reasonable jurors might think that they are precluded from considering any mitigating evidence in the absence of unanimity are constitutionally invalid. *See id.* at 384. The standard for reviewing such a challenge to the jury instructions "is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380 (1990).

In the instant case, the substantive portions of the trial court's instructions were:

> Our statutory law provides that the jury shall fix punishment after a separate sentencing hearing, to determine whether the defendant shall be sentenced to death or life imprisonment. Your verdict must be unanimous as to either form of punishment.
> * * * * * *
> No death penalty shall be imposed unless you unanimously find that the State during the trial, and/or during the sentencing hearing, has proven beyond a reasonable doubt one or more of the following specific statutory aggravating circumstances:
> * * * * * *
> In arriving at the punishment, the jury shall consider, as heretofore indicated any mitigating circumstances which shall include, but not be limited to the following:
> * * * * * *
> If the jury unanimously determines that at least one statutory aggravating circumstance or several statutory aggravating circumstances have been proved by the State beyond a reasonable doubt, and that the aggravating circumstance or circumstances outweigh any mitigating circumstances, the sentence shall be death. If the death penalty is the decision of the jury the members of the jury shall then complete the attached form entitled, quote:
> Punishment of Death
> End quote.